```
                                        ᴿᴱᴄᴱᴵᵛᴱᴰ
                                   U.S. DISTRICT COURT
                                   DISTRICT OF WYOMING

                                   2013 JUL 22  PM 3 57

                                   STEPHAN HARRIS, CLERK
                                        CHEYENNE
```

**Jon M. Moyers, Wyo. State Bar #6-3661**
**MOYERS LAW P.C.**
**490 N. 31 St., Suite 101**
**Billings, Montana 59101**
**Telephone:  (406) 655-4900**
**Facsimile:  (406) 655-4905**
jon@jmoyerslaw.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **ESTATE OF RUSSELL MONACO, BY AND THROUGH KATHY MONACO AND ROB MONACO, PERSONAL REPRESENTATIVES, AND KATHY MONACO, INDIVIDUALLY AND ON BEHALF OF MINOR CHILDREN,** )<br><br>**Plaintiffs,** )<br><br>**vs.** )<br><br>**HARLEY G. MORRELL, PA-C, JOHN SCHNEIDER, JR., M.D., NORTHERN ROCKIES NEURO-SPINE, P.C., a Wyoming Corporation, WEST PARK HOSPITAL DISTRICT, WEST PARK HOSPITAL, QUORUM HEALTH RESOURCES, LLC, a Delaware Corporation, AND JOHN DOES 1 THROUGH 10** )<br>**Defendants.** ) | *13-CV-151 S* |

## COMPLAINT AND JURY DEMAND

Plaintiffs The Estate of Russell Monaco, by and through Kathy Monaco and Rob

Monaco, Personal Representatives of the Estate of Russell Monaco, and Kathy Monaco,

MOYERS LAW P.C.
490 N. 31ˢᵗ St., Suite 101
Billings, Montana  59101
406-655-4900
406-655-4905 fax

1  individually and on behalf of her minor children ("Plaintiffs"), by and through their

2  undersigned counsel of record, Jon M. Moyers, Moyers Law P.C., allege the following facts

3  and claims against Defendants Harley Morrell ("Morrell"), Dr. Schneider ("Schneider"),

4  Northern Rockies Neuro-Spine, P.C., West Park Hospital District, West Park Hospital, Quorum

5  Health Resources, LLC, and John Does 1 through 10:

6      1.      At all relevant times hereto, Russell Monaco was a resident of Billings,

7  Montana. He was survived by his wife, Kathy Monaco, their two minor daughters, and his

8  brother, Rob Monaco. By court appointment, Kathy Monaco and Rob Monaco are Personal

9  Representatives of the Estate and legally authorized to bring this suit for and on behalf of all

10  persons legally permitted to sue for damages. Copies of their appointments are attached a

11  Exhibit A.

12     2.      Plaintiff Kathy Monaco and her two minor children are residents of Billings,

13  Montana.

14     3.      Defendant Harley Morrell was a licensed Physician's Assistant in the State of

15  Wyoming, and employed by Defendants Schneider, Jr., and Northern Rockies Neuro-Spine

16  P.C., in Park County, Wyoming, from May 2006 to January 2012.

17     4.      Upon information and belief, Defendant Morrell is a resident of Georgia.

18     5.      Defendant John Schneider, Jr., M.D., was a licensed physician in the State of

19  Wyoming, with a surgical practice in Park County, Wyoming.

20     6.      Upon information and belief, Defendant Schneider lives in Wyoming or

21  California.

22  Complaint
    Page 2

23

1    7.    Defendant Northern Rockies Neuro-Spine, P.C., was a Wyoming corporation

2    created, incorporated, managed, and controlled by Defendant Schneider related to his medical

3    services provided to patients, including Russell Monaco.

4    8.    Defendant West Park Hospital District claims to be a Wyoming Governmental

5    Entity, organized pursuant to Wyo. Stat. Ann. 35-2-401 et seq. (LEXIS 2009); the Hospital

6    District claims to be an agency as defined by Wyo. Stat. Ann. 16-3-101 (b)(i) (LEXIS 2009).

7    Defendant West Park District created, operates, funds, supervises, directs, and manages West

8    Park Hospital, and represents to the public that the hospital is a full service health facility with

9    experienced and skilled employees and/or agents.

10    9.    Defendant West Park Hospital is a Wyoming facility licensed to operate as a

11    medical facility in Cody, Wyoming.

12    10.    Defendant Quorum Health Resources, LLC is a Delaware corporation doing

13    business in the state of Tennessee, that owns, operates, supervises, manages, and advises West

14    Park Hospital District and West Park Hospital.  Upon information and belief, Defendant

15    Health Resources, LLC employs management at the hospital.

16    11.    Defendants John Does 1 through 10 are other persons who may be liable to

17    Plaintiffs for the injuries suffered by Russell Monaco, and who may have been involved in

18    fraudulently transferring assets of Defendant Schneider, whose identities currently are not

19    known.

20    12.    Pursuant to 28 USC § 1332(c), jurisdiction is proper based upon the diversity of

21    citizenship of the parties and that the amount in controversy in this action exceeds the sum or

22    Complaint
Page 3

23

1  value of $75,000.

2      13.     Pursuant to 28 USC § 1391(b), venue is proper because a substantial part of

3  tortious events or omissions giving rise to this claim occurred in Wyoming, and Defendants

4  Morrell, Schneider, Northern Rockies Neuro-Spine, West Park Hospital District, and West Park

5  Hospital conducted business and reside there.

6      14.     Prior to the commencement of this action, Plaintiffs filed a timely claim with the

7  Wyoming Medical Review Panel, W.S.§§ 9-2-1513 et seq.  By waiver of Defendants Morrell

8  and West Park Hospital, and the determination that Plaintiffs had satisfied all statutory

9  requirements regarding all other Defendants, the proceeding was dismissed.  A copy of the

10  Order of Dismissal is attached to this Complaint as Exhibit B.

11     15.     Prior to the commencement of this action, Plaintiffs gave timely notice by

12  personal service of the claim to the State of Wyoming and Defendants West Park Hospital

13  District and West Park Hospital, pursuant to the Wyoming Governmental Claims Act, W.S. §§

14  1-39-101, *et seq.*, and Article 16, Sec. 7, of the Constitution of the State of Wyoming.  A copy

15  of the Supplemental Notice of Claim and the service are expressly incorporated in this

16  Complaint, and are attached hereto as Exhibits C and D, respectively.

17     16.     Prior to filing of this action, Plaintiffs have consulted with duly qualified experts

18  in support of the allegations set forth herein.

19                          **FACTS COMMON TO ALL CAUSES OF ACTION**

20     17.     On or about November 28, 2011, Russell Monaco was accepted as a patient by

21  Defendants Morrell, Schneider, Northern Rockies Neuro-Spine P.C., West Park Hospital

22  Complaint
   Page 4

                                                    MOYERS LAW P.C.
                                                    490 N. 31st St., Suite 101
                                                    Billings, Montana 59101
23                                                  406-655-4900
                                                    406-655-4905 fax

1   District, and West Park Hospital.

2       18.     On November 28, 2011, after 2:00 p.m., Defendant Morrell assisted his

3   supervising physician, Defendant Schneider, in performing spinal surgery on Russell Monaco

4   at Defendant West Park Hospital to address an asserted "neurosurgical emergency."

5       19.     The surgery at Defendant West Park Hospital consisted of a junction

6   decompressive lumbar laminectomy at levels L2-3, L3-4, and L4-5, bilateral partial

7   facetectomy and foraminotomy for bilateral nerve decompression, and exploration of

8   discogenic deterioration at L2-3, L3-4, and L4-5.

9       20.     At approximately 8:12 a.m., on Wednesday, November 30, 2011, pursuant to

10  orders written by Defendants Schneider, Morrell and West Park Hospital medical staff, a

11  Duragesic Fentanyl transdermal patch (50 MCG/HR) was administered to Russell Monaco for

12  pain control.

13      21.     Based upon the Food & Drug Administration ("FDA"), the federal regulatory

14  agency responsible for the administration of medications, this prescription of Duragesic

15  Fentanyl transdermal patch to Russell Monaco was in contravention of the FDA's most stern

16  warning, referred to as a "black box" warning, by which the manufacturer acknowledges that

17  the drug carries a substantial risk of serious or life threatening adverse effects.

18      22.     Based upon information from the FDA and others, Defendants knew that the

19  drug "has the highest potential of abuse and associated risk of fatal overdoses due to respiratory

20  depression." Also, Defendants knew that the drug should "ONLY be used in patients who are

21  already receiving opioid therapy, who have demonstrated opioid tolerance, and who required a

22  Complaint
    Page 5

23

1  total daily dose at least equivalent to Duragesic 25 mcgt/h."

2      23.    In addition, Defendants knew that the FDA had warned:

3      Because serious or life-threatening hypoventilation could occur, DURAGESIC
       (Fentanyl Transdermal system) is contraindicated:

4

5      • In patients who are not opioid tolerant
       • In the management of acute pain or in patients who require opioid analgesia for
         a short period of time
6      • In the management of post-operative pain, including use after out-patient  or day
         surgeries (e.g. tonsillectomies)
7      • In the management of mild pain
       • In the management of intermittent pain (e.g., use on an as needed basis [prn])
8

9      24.    The medication had been prescribed to multiple other post-operative patients

10 under the direction, review, verification, acknowledgement, approval, consent and signature of

11 Defendants Morrell, Schneider, West Park Hospital District and West Park Hospital, in

12 contravention of the "black box" warning for prescribing that medication for that purpose.

13     25.    Defendants knew that the Full Prescribing Information for Duragesic Fentanyl

14 transdermal patch system states, "Since the peak Fentanyl concentrations generally occur

15 between 20 and 72 hours of treatment, prescribers should be aware that serious or life

16 threatening hypoventilation may occur, even in opioid tolerant patents, during the initial

17 application period."  And, Defendants knew that "Duragesic [is] ONLY for use in patients who

18 are already tolerant to opioid therapy of comparable potency.  Use in non-opioid tolerant

19 patients may lead to fatal respiratory depression.  Overestimating the Duragesic dose when

20 converting patients from another opioid medication can result in fatal overdose with the first

21 dose."  And, Defendants knew that "Patients who are considered opioid tolerant are those who

MOYERS LAW P.C.
490 N. 31st St., Suite 101
Billings, Montana  59101
406-655-4900
406-655-4905 fax

1  have been taking, for a week or longer, at least 60 mg of morphine daily, or at least 30 mg of

2  oral Oxycodone daily, or at least 8 mg of oral hydromorphone daily or an equianalgesic dose of

3  another opioid."

4       26.     Defendants knew that Russell Monaco was not opioid tolerant when the

5  Fentanyl transdermal system patch was prescribed by Defendants Morrell, Schneider, and West

6  Park Hospital, and the prescription was filled and applied to Russell Monaco by the hospital

7  staff.  Instead, Defendants knew or should have known that Russell Monaco was at substantial

8  risk of life threatening hypoventilation from the drug.

9       27.     Subsequent to the application of the Fentanyl patch, Russell Monaco

10  experienced documented low oxygen saturation events. On December 1, at 8:26 a.m., during a

11  "room air challenge," Russell Monaco's oxygen saturation fell to 75%. Defendant West Park

12  Hospital staff reported to Defendants Morrell and Schneider that Russell Monaco's oxygen

13  saturation had fallen, but the precise percentage was not reported by Defendant West Park

14  Hospital staff or requested by Defendants Morrell or Schneider.

15       28.     Defendants Morrell and Schneider decided to discharge Russell Monaco that

16  same day as scheduled, which order was conveyed to Defendant West Park Hospital staff.

17  Defendant West Park Hospital consented and agreed to the discharge.

18       29.     Defendant West Park Hospital staff did not report the 75% oxygen saturation

19  level to any supervisor at the hospital, and no such communication was documented in the

20  hospital's records.

21       30.     At 10:00 a.m., December 1, 2011, Defendant West Park Hospital discharged

22  Complaint
   Page 7

MOYERS LAW P.C.
490 N. 31st St., Suite 101
Billings, Montana 59101
406-655-4900
406-655-4905 fax

1  Russell Monaco pursuant to order.  The discharge was at the direction and with the knowledge,

2  consent, approval, verification, and signature of Defendants Morrell, Schneider, West Park

3  Hospital District and West Park Hospital.  In addition to his (1) Fentanyl transdermal patches

4  (Russell Monaco had one in place and was given a prescription for five replacement patches),

5  Russell Monaco was prescribed (2) hydromorphone (Dilaudid), 4 mg, (3) Oxycodone, 8-5 325

6  mg; (4) diazepam (Valium), 5 mg.  Additionally, at the time of discharge, Defendants Morrell

7  and Schneider ordered an intramuscular injection consisting of Meperidine (Demerol), a pain

8  medication, and promethazine (Phenergan), an anti-nausea medication with depressive effects.

9  All of these controlled substances, individually and/or collectively, have identified respiratory

10  side-effects.

11      31.      The improper administration of these controlled substances for post-operative

12  patients at Defendant West Park Hospital had been the practice of Defendants Morrell,

13  Schneider, Northern Rockies Neuro-Spine, West Park Hospital District, and West Park

14  Hospital.  Each order related to these other patients were known, directed, reviewed, verified,

15  acknowledged, approved, consented and/or signed by Defendants Morrell, Schneider, Northern

16  Rockies Neuro-Spine, and West Park Hospital.

17      32.      Russell Monaco was discharged without any oxygen monitoring or

18  supplemental oxygen, notwithstanding his recent and known hypoxic events during his hospital

19  stay and these prescribed medications.

20      33.      Russell Monaco was discharged without any provision for skilled medical care

21  to monitor and supplement his oxygen.

22  Complaint
   Page 8

MOYERS LAW P.C.
490 N. 31st St., Suite 101
Billings, Montana 59101
406-655-4900
406-655-4905 fax

23

1      34.     The discharge from the hospital violated the standing orders for the discharge of

2   patients that were to be followed by Defendants Morrell, Schneider, West Park Hospital

3   District and West Park Hospital.

4      35.     The discharge of Russell Monaco in his medical condition on these medications

5   without any oxygen monitoring or supplemental oxygen placed Russell Monaco at high risk of

6   respiratory event, which event in fact caused his premature death.

7      36.     Thereafter, following his discharge from Defendant West Park Hospital on

8   December 1, 2011, Russell Monaco returned to his residence in Billings, Montana, where he

9   took the medication as prescribed and retired to sleep. At 6:00 a.m., on December 2, 2011,

10  Russell Monaco's family found him unresponsive. Emergency medical services personnel were

11  unable to detect any life, efforts to revive him were called off, and he was declared dead at the

12  scene.

13     37.     The Yellowstone County, Montana, Coroner's Office, and Dr. Thomas Bennett,

14  a board certified forensic pathologist, based upon autopsy and testing of Russell Monaco's

15  blood by the State of Montana, determined that Russell Monaco died from "mixed drug

16  overdose (including Oxycodone, Fentanyl, Meperidine, and Diazepam)." Further, "Toxicology

17  studies through the Montana Forensics Laboratory found significant levels of Oxycodone,

18  Fentanyl, Meperidine and Diazepam, all of which have respiratory depressant effects, the

19  combination sufficient to explain this man's death. In my opinion, this man died as a result of

20  this mixed drug overdose." All four of these medications were prescribed and/or administered

21  to Russell Monaco per orders from Defendants Morrell and Dr. Schneider, with the knowing

22  Complaint
    Page 9

23

MOYERS LAW P.C.
490 N. 31st St., Suite 101
Billings, Montana 59101
406-655-4900
406-655-4905 fax

1  approval of Defendant West Park Hospital and were the cause of Russell Monaco's death.  No

2  other fatal cause was found independent of the prescribed medication.

3      38.    Russell Monaco was not negligent in any way related to his care, treatment or

4  death.

5      39.    By virtue of his death, Russell Monaco and his family have lost his future wages

6  and fringe benefits, household services, and consortium, and Russell Monaco suffered

7  conscious pain and suffering as he died.

8              **ALLEGATIONS OF PROFESSIONAL NEGLIGENCE**

9                   **COUNT I - Defendant Morrell**

10     40.    Plaintiffs incorporate by reference the preceding allegations as if set forth

11  herein.

12     41.    At all times relevant, Defendant Morrell held himself out as a Physician's

13  Assistant with a specialty in neurosurgery.

14     42.    At all times relevant hereto, Defendant Morrell had a physician-patient

15  relationship with Russell Monaco.

16     43.    At all times relevant, Russell Monaco trusted Defendant Morrell as a

17  Physician's Assistant with specialty training in the field of neurosurgery to comply with his

18  duty to provide him with the degree of care expected of specialists in that field, with his

19  learning, skill and specialty training.

20     44.    Defendant Morrell owed Russell Monaco the duty to use the care and skill

21  ordinarily used by reputable specialists practicing in the same field and under similar

22  Complaint                                          MOYERS LAW P.C.
   Page 10                                          490 N. 31st St., Suite 101
                                                    Billings, Montana 59101
23                                                       406-655-4900
                                                     406-655-4905 fax

1  circumstances, and to apply means and methods which would reasonably be exercised and

2  applied under similar circumstances by such specialists.

3      45.     In the prescription of dangerous narcotics, Defendant Morrell owed Russell

4  Monaco the highest standard of care, knowing the risk of seriously bodily injury and death

5  from the use of those drugs by a naïve user.

6      46.     In providing care and surgical services to Russell Monaco, Defendant Morrell

7  was negligent and provided services below the accepted and prudent standards of medical care,

8  including without limitation, the following:

9      a.      Prescribed medication contrary to established warnings and protocol; and/or,

10     b.      Failed to monitor, assess, treat, remedy and supervise treatment of Russell

11  Monaco's respiratory depression caused by the prescribed medication and/or surgery; and/or,

12     c.      Discharged Russell Monaco in violation of standing orders for respiratory

13  compromised patients; and/or,

14     d.      Discharged Russell Monaco on medication with known risks of respiratory

15  depression; and/or,

16     e.      Discharged Russell Monaco when he knew or should have known that other

17  patients had died from prescription induced respiratory depression; and/or,

18     f.      Discharged Russell Monaco without monitoring equipment, skilled care,

19  supplemental oxygen, and warnings of the signs and symptoms of respiratory depression;

20  and/or,

21     g.      Failed to supervise the discharge of Russell Monaco to ensure proper

22  Complaint
   Page 11

23

1    respiration, monitoring, and oxygen supply; and/or,

2        h.      Failed to obtain informed consent from Russell Monaco for the prescription of

3    medication that would be used contrary to established warnings and protocol; and/or,

4        i.      Failed to warn patients, hospital personnel, and/or government personnel of the

5    practice of Defendant Schneider to prescribe medication post-operatively that placed

6    discharged patients at risk of respiratory depression, injury and death; and/or,

7        j.      Failed to obtain sufficient liability insurance to cover injuries caused by the

8    negligence of Defendants.

9        47.     Further, by the doctrine of respondeat superior and agency, Defendants

10   Schneider and Northern Rockies Neuro-Spine P.C. are vicariously liable for these negligent

11   acts and omissions of their employee and agent, Defendant Morrell.

12       48.     Following the death of Russell Monaco, Defendant Morrell left his employment

13   with Defendants Schneider and Northern Rockies Neuro-Spine.  On April 12, 2012, the

14   Wyoming Board of Medicine suspended his Wyoming Physician Assistant License (no. 298),

15   based upon his voluntary consent decree.  Since that time he has not practiced as a Physician's

16   Assistant.

17                           **COUNT II - Defendant Schneider**

18       49.     Plaintiffs incorporate by reference the preceding allegations as if set forth

19   herein.

20       50.     At all times relevant, Defendant Schneider held himself out as a specialist in

21   neurosurgery, board certified as a neurosurgeon, licensed to practice medicine in Wyoming,

22   Complaint                                                   MOYERS LAW P.C.
     Page 12                                              490 N. 31st St., Suite 101
                                                         Billings, Montana 59101
23                                                          406-655-4900
                                                           406-655-4905 fax

1    and owner of Northern Rockies Neuro-Spine, P.C.

2        51.    Upon information and belief, prior to Defendant Schneider's appointment to the

3    medical staff at Defendant West Park Hospital, he had resigned his staff privileges or had his

4    staff privileges restricted or terminated at St. Vincent's Hospital and/or (Deaconess) Billings

5    Clinic in Billings, Montana.

6        52.    Upon information and belief, Defendant Schneider has been the subject of

7    numerous lawsuits and disciplinary proceedings.

8        53.    At all times relevant, Russell Monaco trusted Defendant Schneider as a

9    specialist in neurosurgery fully competent to provide the diagnosis and treatment required of

10   such a specialist, necessary for the health and well being of Russell Monaco.

11       54.    Defendant Schneider, as an appointed member of the West Park Hospital

12   Medical Staff with "Clinical Privileges," routinely performed surgery at West Park Hospital,

13   admitted and discharged patients, ordered prescription medications, and accessed hospital

14   equipment, facilities and personnel, which were necessary to effectively exercise such

15   privileges.

16       55.    Defendant Schneider owed Russell Monaco the duty to use the care and skill

17   ordinarily used by reputable specialists practicing in the same field and under similar

18   circumstances, and to apply means and methods which would reasonably be exercised and

19   applied under similar circumstances by such specialists.

20       56.    In the prescription of dangerous narcotics, Defendant Schneider owed Russell

21   Monaco the highest standard of care, knowing the risk of serious bodily injury and death from

22   Complaint
     Page 13

23

1  the use of those drugs by a naïve user.

2       57.     In providing care and surgical services to Russell Monaco, Defendant Schneider

3  was negligent and provided services below safe the accepted and prudent standards of medical

4  care, including without limitation, the following:

5       a.      Prescribed medication contrary to established warnings and protocol; and/or,

6       b.      Failed to monitor, assess, treat, remedy and supervise treatment of Russell

7  Monaco's respiratory depression caused by the prescribed medication and/or surgery; and/or,

8       c.      Discharged Russell Monaco in violation of standing orders for respiratory

9  compromised patients; and/or,

10      d.      Discharged Russell Monaco on medication with known risks of respiratory

11  depression; and/or,

12      e.      Discharged Russell Monaco when he knew or should have known that other

13  patients had died from prescription induced respiratory depression; and/or,

14      f.      Discharged Russell Monaco without monitoring equipment, skilled care,

15  supplemental oxygen, and warnings of the signs and symptoms of respiratory depression;

16  and/or,

17      g.      Failed to supervise the discharge of Russell Monaco to ensure proper

18  respiration, monitoring, and oxygen supply; and/or,

19      h.      Failed to obtain informed consent from Russell Monaco for the prescription of

20  medication that would be used contrary to established warnings and protocol; and/or,

21      i.      Failed to warn patients, hospital personnel, and/or government personnel of the

22  Complaint                                          MOYERS LAW P.C.
   Page 14                                            490 N. 31ˢᵗ St., Suite 101
                                                      Billings, Montana 59101
23                                                    406-655-4900
                                                      406-655-4905 fax

1  practice of Defendant Schneider to prescribe medication post-operatively that placed

2  discharged patients at risk of respiratory depression, injury and death; and/or,

3      j.      Failed to obtain sufficient liability insurance to cover injuries caused by the

4  negligence of Defendants.

5      58.     By the doctrine of respondeat superior and agency, Defendant Schneider is

6  vicariously liable for these negligent acts and omissions of his employee and agent, Defendant

7  Morrell.

8      59.     Upon information and belief, following the death of Russell Monaco, the State

9  of Wyoming suspended Defendant Schneider's medical license.

10     60.     Further, upon information and belief, Defendant Schneider, the Schneider

11 Family Limited Partnership (an alter ego of Defendant Schneider), and Northern Rockies

12 Insurance Company, LLC (a captive insurance company created by Defendant Schneider)

13 engaged in a series of fraudulent acts in furtherance of a fraudulent scheme to transfer his assets

14 out of the reach of injured parties, including Russell Monaco and his family.

15     61.     Upon information and belief, following the death of Russell Monaco, Defendant

16 Schneider borrowed $3,000,000 from the Schneider Family Limited Partnership and then

17 submitted a claim for indemnification to his captive insurance company, Northern Rockies

18 Insurance Co., owned, operated, and managed by Defendant Schneider and his sister, Kathleen

19 Burrows.

20     62.     Northern Rockies Insurance Co. paid the claim, with the sole purpose and intent

21 of leaving the insurance company insolvent.

22 Complaint
   Page 15

MOYERS LAW P.C.
490 N. 31st St., Suite 101
Billings, Montana 59101
23                                                                         406-655-4900
                                                                           406-655-4905 fax

1    63.    Upon payment of the claim, Dr. Schneider then returned the funds to the

2    Schneider Family Limited Partnership.

3    64.    In this and other ways, Defendant Schneider has attempted to hide, transfer,

4    dissipate assets owed to creditors and injured patients like Plaintiffs, by transferring assets,

5    property or obligations to insiders, including his family, trusts, and business entities.

6    65.    Transfer of assets to insiders were made with actual intent to hinder, delay or

7    defraud creditors and thus constitutes fraudulent transfers, under the Uniform Fraudulent

8    Transfer Act, W.S. §§ 34-14-201, et seq.

9    66.    Defendant Schneider knew of the claim by Plaintiffs, and other injured patients,

10   at the time of the fraudulent transfers.

11   67.    In addition, upon information and belief, Defendant Schneider failed to properly

12   capitalize, license, and register Northern Rockies Insurance Co., with the specific intent of

13   hindering, delaying and defrauding payment to creditors and injured patients like Plaintiffs.

14   68.    Plaintiffs lack an adequate remedy at law because, unless relief sought in this

15   Court is granted, Defendant Schneider will have succeeded in fraudulently transferring his

16   assets to the substantial detriment of Plaintiffs.

17   69.    All fraudulent and illegal transfers must be voided and all assets must be

18   accounted for and secured by this Court for the protection of Plaintiffs.

19                    **COUNT III - Defendant Northern Rockies Neuro-Spine, P.C.**

20   70.    Plaintiffs incorporate by reference the preceding allegations as if set forth

21   herein.

22   Complaint                                                    MOYERS LAW P.C.
     Page 16                                                      490 N. 31ˢᵗ St., Suite 101
                                                                  Billings, Montana 59101
23                                                                406-655-4900
                                                                  406-655-4905 fax

71.     Defendant Northern Rockies Neuro-Spine P.C., by and through its employees and agents, including Defendants Morrell and Schneider, owed Russell Monaco the duty to use the care and skill ordinarily used by reputable specialists practicing in the same field and under similar circumstances, and to apply means and methods which would reasonably be exercised and applied under similar circumstances by such specialists.

72.     In providing care and surgical services to Russell Monaco, Defendant Northern Rockies Neuro-Spine P.C. was negligent and provided services below the accepted and prudent standards of medical care, including without limitation, the following by its employees and agents, including Defendants Morrell and Schneider:

a.      Prescribed medication contrary to established warnings and protocol; and/or,

b.      Failed to monitor, assess, treat, remedy and supervise treatment of Russell Monaco's respiratory depression caused by the prescribed medication and/or surgery; and/or,

c.      Discharged Russell Monaco in violation of standing orders for respiratory compromised patients; and/or,

d.      Discharged Russell Monaco on medication with known risks of respiratory depression; and/or,

e.      Discharged Russell Monaco when he knew or should have known that other patients had died from prescription induced respiratory depression; and/or,

f.      Discharged Russell Monaco without monitoring equipment, skilled care, supplemental oxygen, and warnings of the signs and symptoms of respiratory depression; and/or,

Complaint
Page 17

MOYERS LAW P.C.
490 N. 31st St., Suite 101
Billings, Montana 59101
406-655-4900
406-655-4905 fax

1    g.    Failed to supervise the discharge of Russell Monaco to ensure proper

2 respiration, monitoring, and oxygen supply; and/or,

3    h.    Failed to obtain informed consent from Russell Monaco for the prescription of

4 medication that would be used contrary to established warnings and protocol; and/or,

5    i.    Failed to obtain sufficient liability insurance to cover injuries caused by the

6 negligence of Defendants.

7    73.    Further, by the doctrine of respondeat superior and agency, Defendant Northern

8 Rockies Neuro-Spine P.C. is vicariously liable for negligent acts and omissions of its

9 employees and agents, including Defendants Morrell and Schneider.

10    **COUNT IV - Defendant West Park Hospital District**

11    74.    Plaintiffs incorporate by reference the preceding allegations as if set forth

12 herein.

13    75.    At all times relevant, Defendant West Park Hospital District recognized its

14 responsibility for the "overall quality of clinical services provided by its members" and

15 therefore established bylaws and other hospital polices so that it "can fulfill its responsibility

16 for quality of care" to patients.

17    76.    At all times relevant, Defendant West Park Hospital District granted clinical

18 privileges to Defendants Schneider and Morrell to perform surgery at the facility, approved

19 credentialing for Defendants Schneider and Morrell, and established bylaws for its medical

20 staff to thereby meet "all relevant standards and to improve the quality of care delivered in this

21 institution." These bylaws included the requirement that Defendants Schneider and Morrell

22 Complaint                                                    MOYERS LAW P.C.
Page 18                                                490 N. 31ˢᵗ St., Suite 101
                                                      Billings, Montana 59101
23                                                          406-655-4900
                                                          406-655-4905 fax

1 "possess current, valid professional liability insurance coverage in such form and in amounts
2 satisfactory to the Hospital."

3   77.   Defendant West Park Hospital District thus owed Russell Monaco the duty for
4 the appointed members of its medical staff to use the care and skill ordinarily used in the same
5 field and under similar circumstances, and to apply means and methods which would reasonably
6 be exercised and applied under similar circumstances by such specialists.

7   78.   Defendant West Park Hospital District thus owed Russell Monaco the duty to
8 ensure that the hospital bylaws were complied with, that the medical staff possessed sufficient
9 medical skill to practice medicine at the facility, and that the medical staff possessed sufficient
10 professional liability insurance.

11   79.   Defendant West Park Hospital District knew or should have known about
12 Defendant's Schneider's numerous medical malpractice lawsuit, multiple claims history,
13 departure from the Billings medical facilities, issues related to his character, post-operative
14 complications, and other matters prior to appointing him to its medical staff.  By making such
15 appointments and allowing him unrestricted access to patients, Defendant placed such patients
16 at substantial risk of harm.

17   80.   Defendant West Park Hospital District knew or should have known that
18 Defendants Schneider and Morrell did not have sufficient or legal professional liability
19 insurance and thereby placed patients at jeopardy for being unable to be compensated for
20 negligence by these Defendants.

21   81.   Defendant West Park Hospital District knew or should have known that

22 Complaint
Page 19

23

MOYERS LAW P.C.
490 N. 31st St., Suite 101
Billings, Montana 59101
406-655-4900
406-655-4905 fax

1    Defendant Schneider acted in violation of the hospital bylaws related to liability insurance, and

2    thereby authorized his surgical practice knowing that he had failed to comply with the bylaws,

3    to the substantial detriment of patients like Russell Monaco.

4        82.    Defendant West Park Hospital District was negligent and provided services

5    below the accepted and prudent standards of medical care, including without limitation, the

6    following by its employees, agents and medical staff, including Defendants Morrell, Schneider

7    and West Park Hospital:

8        a.    Prescribed medication contrary to established warnings and protocol; and/or,

9        b.    Failed to monitor, assess, treat, remedy and supervise the treatment of Russell

10   Monaco's respiratory depression caused by the prescribed medication and/or surgery; and/or,

11       c.    Failed to act upon information related to the desaturation of Russell Monaco in a

12   way most protective of his health; and/or

13       d.    Discharged Russell Monaco in violation of standing orders for respiratory

14   compromised patients; and/or,

15       e.    Discharged Russell Monaco on medication with known risks of respiratory

16   depression; and/or,

17       f.    Discharged Russell Monaco when it knew or reasonably should have known that

18   other patients had died from prescription induced respiratory depression; and/or,

19       g.    Discharged Russell Monaco without monitoring equipment, skilled care,

20   supplemental oxygen, and warnings of the signs and symptoms of respiratory depression;

21   and/or,

22   Complaint                                                      MOYERS LAW P.C.
     Page 20                                                490 N. 31st St., Suite 101
                                                            Billings, Montana 59101
23                                                               406-655-4900
                                                              406-655-4905 fax

h.    Failed to supervise the discharge of Russell Monaco to ensure proper respiration, monitoring, and oxygen supply; and/or,

i.    Failed to obtain informed consent from Russell Monaco for the prescription of medication that would be used contrary to established warnings and protocol; and/or,

j.    Failed to ensure that Defendants Morrell, Schneider, and Northern Rockies Neuro-Spine had obtained sufficient liability insurance to cover injuries caused by the negligence of Defendants; and/or,

k.    Failed to utilize the chain of command to prevent the unsafe discharge of Russell Monaco given his low oxygen saturation on the day of discharge.

83.    Further, by the doctrine of respondeat superior and agency, Defendant West Park Hospital District is vicariously liable for negligent acts and omissions of its employees, medical staff and agents, Defendants Morrell, Schneider, and West Park Hospital.

84.    Further alleging, Defendant West Park Hospital District was negligent and provided services below safe the accepted and prudent standards of medical care, including without limitation:

a.    Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known that he failed to provide appropriate quality of patient care;

b.    Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider when it knew or should have known that he did not possess current, valid professional liability insurance coverage in such form and the

MOYERS LAW P.C.
490 N. 31st St., Suite 101
Billings, Montana 59101
406-655-4900
406-655-4905 fax

1  amounts satisfactory to compensate victims of his malpractice;

2  c.  Failed to modify and/or terminate the clinical privileges, rights, and

3  credentialing granted to Defendant Schneider, when it knew or should have known that he

4  routinely discharged patients on prescription medication that placed the patient at risk of

5  respiratory depression, bodily injury and/or death;

6  d.  Failed to modify and/or terminate the clinical privileges, rights, and

7  credentialing granted to Defendant Schneider, when it knew or should have known that he

8  routinely discharged patients at risk of respiratory depressions, bodily injury and/or death;

9  e.  Failed to modify and/or terminate the clinical privileges, rights, and

10  credentialing granted to Defendant Schneider, when it knew or should have known that he was

11  not of "good reputation and character";

12  f.  Failed to modify and/or terminate the clinical privileges, rights, and

13  credentialing granted to Defendant Schneider, when it knew or should have known that he had

14  unreasonably high post-surgical complications, infections and revisions;

15  g.  Failed to modify and/or terminate the clinical privileges, rights, and

16  credentialing granted to Defendant Schneider, when it knew or should have known of the

17  numerous patient complaints filed with the Wyoming Medical Review Panel and/or medical

18  staff;

19  h.  Failed to investigate his surgical, prescription, and discharge practices, knowing

20  of other patient complaints and complications;

21  i.  Failed to adopt and enforce bylaws, policies, and procedures sufficient for

22  Complaint
Page 22

MOYERS LAW P.C.
490 N. 31st St., Suite 101
Billings, Montana 59101
406-655-4900
406-655-4905 fax

23

1  quality and safety health care to patients like Russell Monaco;

2       j.     Failed to modify or terminate the clinical privileges, rights and credentialing

3  granted to Defendant Schneider, when it knew or should have known that he had failed to

4  obtain liability insurance in an amount adequate to cover the injuries suffered by patients.

5  <center>**COUNT V - Defendant West Park Hospital**</center>

6       85.     Plaintiffs incorporate by reference the preceding allegations as if set forth

7  herein.

8       86.     At all times relevant, Defendant West Park Hospital recognized its responsibility

9  for the "overall quality of clinical services provided by its members" and therefore established

10  bylaws and other hospital polices so that it "can fulfill its responsibility for quality of care" to

11  patients.

12       87.     At all times relevant, Defendant West Park Hospital granted clinical privileges

13  to Defendants Schneider and Morrell to perform surgery at the facility, approved credentialing

14  for Defendants Schneider and Morrell, and established bylaws for its medical staff to thereby

15  meet "all relevant standards and to improve the quality of care delivered in this institution."

16  These bylaws included the requirement that Defendants Schneider and Morrell "possess

17  current, valid professional liability insurance coverage in such form and in amounts satisfactory

18  to the Hospital."

19       88.     Defendant West Park Hospital thus owed Russell Monaco the duty for the

20  appointed members of its medical staff to use the care and skill ordinarily used in the same field

21  and under similar circumstances, and to apply means and methods which would reasonably be

22  Complaint
Page 23

23

1  exercised and applied under similar circumstances by such specialists.

2      89.    Defendant West Park Hospital thus owed Russell Monaco the duty to ensure that

3  the hospital bylaws were complied with, that the medical staff possessed sufficient medical

4  skill to practice medicine at the facility, and that the medical staff possessed sufficient

5  professional liability insurance.

6      90.    Defendant West Park Hospital knew or should have known about Defendant's

7  Schneider's numerous medical malpractice lawsuits, multiple claims history, departure from

8  the Billings medical facilities, issues related to his character, post-operative complications, and

9  other matters prior to and after appointing him to its medical staff.  By making such

10 appointments and allowing him unrestricted access to patients, Defendant placed such patients

11 at substantial risk of harm.

12     91.    Defendant West Park Hospital knew or should have known that Defendants

13 Schneider and Morrell did not have sufficient or legal professional liability insurance and

14 thereby placed patients at jeopardy for being unable to be compensated for negligence by these

15 Defendants.

16     92.    Defendant West Park Hospital knew or should have known that Defendant

17 Schneider acted in violation of the hospital bylaws related to liability insurance, and thereby

18 authorized his surgical practice knowing that he had failed to comply with the bylaws, to the

19 substantial detriment of patients like Russell Monaco.

20     93.    Defendant West Park Hospital was negligent and provided services below the

21 accepted and prudent standards of medical care, including without limitation, the following by

22 Complaint
   Page 24

23

MOYERS LAW P.C.
490 N. 31st St., Suite 101
Billings, Montana 59101
406-655-4900
406-655-4905 fax

its employees, agents and medical staff, including Defendants Morrell and Schneider:

    a.    Prescribed medication contrary to established warnings and protocol; and/or,

    b.    Failed to monitor, assess, treat, remedy and supervise treatment of Russell Monaco's respiratory depression caused by the prescribed medication and/or surgery; and/or,

    c.    Failed to act upon information related to the desaturation of Russell Monaco in a way most protective of his health; and/or

    d.    Discharged Russell Monaco in violation of standing orders for respiratory compromised patients; and/or,

    e.    Discharged Russell Monaco on medication with known risks of respiratory depression; and/or,

    f.    Discharged Russell Monaco when it knew or should have known that other patients had died from prescription induced respiratory depression; and/or,

    g.    Discharged Russell Monaco without monitoring equipment, skilled care, supplemental oxygen, and warnings of the signs and symptoms of respiratory depression; and/or,

    h.    Failed to supervise the discharge of Russell Monaco to ensure proper respiration, monitoring, and oxygen supply; and/or,

    i.    Failed to obtain informed consent from Russell Monaco for the prescription of medication that would be used contrary to established warnings and protocol; and/or,

    j.    Failed to ensure that Defendants Morrell, Schneider, and Northern Rockies Neuro-Spine had obtained sufficient liability insurance to cover injuries caused by the

Complaint
Page 25

MOYERS LAW P.C.
490 N. 31ˢᵗ St., Suite 101
Billings, Montana 59101
406-655-4900
406-655-4905 fax

1  negligence of Defendants and/or,

2      k.      Failed to utilize the chain of command to prevent the unsafe discharge of

3  Russell Monaco given his low oxygen saturation on the day of discharge.

4      94.     Further alleging, Defendant West Park Hospital District was negligent and

5  provided services below the accepted and prudent standards of medical care, including without

6  limitation:

7      a.      Failed to modify and/or terminate the clinical privileges, rights, and

8  credentialing granted to Defendant Schneider, when it knew or should have known that he

9  failed to provide appropriate quality of patient care;

10     b.      Failed to modify and/or terminate the clinical privileges, rights, and

11  credentialing granted to Defendant Schneider when it knew or should have known that he did

12  not possess current, valid professional liability insurance coverage in such form and the

13  amounts satisfactory to compensate victims of his malpractice;

14     c.      Failed to modify and/or terminate the clinical privileges, rights, and

15  credentialing granted to Defendant Schneider, when it knew or should have known that he

16  routinely discharged patients on prescription medication that placed the patient at risk of

17  respiratory depression, bodily injury and/or death;

18     d.      Failed to modify and/or terminate the clinical privileges, rights, and

19  credentialing granted to Defendant Schneider, when it knew or should have known that he

20  failed to conduct himself "in the highest ethical tradition," to remain competent in his field, and

21  "worthy in good character and professional ethics and conduct";

22  Complaint
    Page 26

23

MOYERS LAW P.C.
490 N. 31st St., Suite 101
Billings, Montana 59101
406-655-4900
406-655-4905 fax

1       e.      Failed to modify and/or terminate the clinical privileges, rights, and

2  credentialing granted to Defendant Schneider, when it knew or should have known that he had

3  unreasonably high post-surgical complications, infections and revisions;

4       f.      Failed to modify and/or terminate the clinical privileges, rights, and

5  credentialing granted to Defendant Schneider, when it knew or should have known of the

6  numerous patient complaints filed with the Wyoming Medical Review Panel and/or medical

7  staff;

8       g.      Failed to investigate his surgical, prescription, and discharge practices, knowing

9  of other patient complaints and complications;

10       h.      Failed to modify or terminate the clinical privileges, rights and credentialing

11  granted to Defendant Schneider, when it knew or should have known that he had failed to

12  obtain liability insurance in an amount adequate to cover the injuries suffered by patients.

13       95.      Further, by the doctrine of respondeat superior and agency, Defendant West

14  Park Hospital is vicariously liable for negligent acts and omissions of its employees, medical

15  staff and agents, including Defendants Morrell and Schneider.

16               **COUNT VI – Defendant Quorum Health Resources, LLC**

17       96.      Plaintiffs incorporate by reference the preceding allegations as if set forth

18  herein.

19       97.      Defendant Quorum Health Resources, LLC owed Russell Monaco the duty to

20  operate, supervise, manage, and advise West Park Hospital District and West Park Hospital to

21  ensure the quality of care necessary for his safety.

22  Complaint
     Page 27

23

MOYERS LAW P.C.
490 N. 31st St., Suite 101
Billings, Montana 59101
406-655-4900
406-655-4905 fax

1      98.    Defendant Quorum Health Resources, LLC owed Russell Monaco the duty to

2   ensure that appropriate hospital bylaws were adopted and enforced to ensure that that the

3   medical staff possessed sufficient medical skill to practice medicine at the facility, and that the

4   medical staff possessed sufficient professional liability insurance.

5      99.    Defendant Quorum Health Resources, LLC owed Russell Monaco the duty to

6   ensure that the appointed members of its medical staff used the care and skill ordinarily used in

7   the same field and under similar circumstances, and to apply means and methods which would

8   reasonably be exercised and applied under similar circumstances by such specialists.

9      100.    Defendant Quorum Health Resources, LLC owed Russell Monaco the duty to

10   respond to patient complaints about Defendant Schneider; investigate claims and lawsuits

11   against Defendant Schneider; supervise medical services provided by Defendant Schneider;

12   investigate applications for clinical privileges and appointments made by Defendant Schneider;

13   to ensure sufficient professional liability insurance was possessed by Defendant Schneider and

14   Morrell;  and enforce appropriate standing orders for the prescription of drugs and the

15   discharge of patients from the hospital.

16      101.    Defendant Quorum Health Resources, LLC was negligent and provided services

17   below the accepted and prudent standards of medical care, including without limitation:

18      a.    Failed to modify and/or terminate the clinical privileges, rights, and

19   credentialing granted to Defendant Schneider, when it knew or should have known that he

20   failed to provide appropriate quality of patient care;

21      b.    Failed to modify and/or terminate the clinical privileges, rights, and

22   Complaint
Page 28

23

1  credentialing granted to Defendant Schneider when it knew or should have known that he did

2  not possess current, valid professional liability insurance coverage in such form and the

3  amounts satisfactory to compensate victims of his malpractice;

4      c.     Failed to modify and/or terminate the clinical privileges, rights, and

5  credentialing granted to Defendant Schneider, when it knew or should have known that he

6  routinely discharged patients on prescription medication that placed the patient at risk of

7  respiratory depression, bodily injury and/or death;

8      d.     Failed to modify and/or terminate the clinical privileges, rights, and

9  credentialing granted to Defendant Schneider, when it knew or should have known that he

10 failed to conduct himself "in the highest ethical tradition," to remain competent in his field, and

11 "worthy in good character and professional ethics and conduct";

12     e.     Failed to modify and/or terminate the clinical privileges, rights, and

13 credentialing granted to Defendant Schneider, when it knew or should have known that he had

14 unreasonably high post-surgical complications, infections and revisions;

15     f.     Failed to modify and/or terminate the clinical privileges, rights, and

16 credentialing granted to Defendant Schneider, when it knew or should have known of the

17 numerous patient complaints filed with the Wyoming Medical Review Panel and/or medical

18 staff;

19     g.     Failed to investigate his surgical, prescription, and discharge practices, knowing

20 of other patient complaints and complications;

21     h.     Failed to modify or terminate the clinical privileges, rights and credentialing

22 Complaint
   Page 29

MOYERS LAW P.C.
490 N. 31st St., Suite 101
Billings, Montana 59101
406-655-4900
406-655-4905 fax

23

1  granted to Defendant Schneider, when it knew or should have known that he had failed to

2  obtain liability insurance in an amount adequate to cover the injuries suffered by patients.

3      102.    Further, by the doctrine of respondeat superior and agency, Defendant Quorum

4  Health Resources, LLC is vicariously liable for negligent acts and omissions of its employees,

5  medical staff and agents, including Defendants Morrell and Schneider.

6                          **DAMAGES AND JURY DEMAND**

7      103.    The negligence of each Defendant, acting alone or in concert, as alleged above,

8  in departure of the accepted standards of medical care, was a proximate and substantial

9  contributing factor in bringing about the death of Russell Monaco and/or in causing:

10      a.    The conscious suffering and eventual death of Russell Monaco;

11      b.    The loss of opportunity and chance for a better result;

12      c.    The loss of income, consortium and normal marital relationship with Kathy

13  Monaco;

14      d.    The loss of income, consortium and normal parental relationship with his two

15  minor children.

16      104.    As a direct and proximate result of the negligence of each Defendant, as alleged

17  above, Plaintiffs have suffered damages, including without limitation, the following:

18      a.    Past and future lost earnings of Russell Monaco;

19      b.    Past and future lost household services by Russell Monaco;

20      c.    Physical pain, suffering and emotional distress suffered by Russell Monaco;

21      d.    Physical pain, suffering and emotional distress suffered by Kathy Monaco and

22  Complaint
Page 30

23

1  her surviving minor children

2       e.    Past and future lost enjoyment of life;

3       f.    Past and future lost established course of living; and,

4       g.    All damages recoverable by law.

5       105.    Plaintiffs affirmatively allege that any statutory cap on their recovery of

6  damages is violative of the Constitution of the State of Wyoming and thus unenforceable and

7  invalid.  To the extent any cap may be applicable to his case, Plaintiffs seek declaratory relief.

8  Notice to the Wyoming Attorney General is given contemporaneously with the filing of this

9  Complaint.

10       WHEREFORE, Plaintiffs The Estate of Russell Monaco, by and through Kathy Monaco

11  and Rob Monaco, Personal Representatives, and Kathy Monaco, on behalf of herself and her

12  children, pray for judgment against Defendants, for such relief as this Court deems just and

13  proper, for such an amount of damages allowed under the laws of the State of Wyoming,

14  including all compensatory damages, and for such further relief as is just and appropriate.

15       Plaintiffs request a jury on all issues triable.

16       DATED this 19th day of July 2013.

17                    MOYERS LAW P.C.

18

19           By:_____
                   Jon M. Moyers
                   Wyo. State Bar #6-3661

20                     Attorney for Plaintiffs

21

22  Complaint
  Page 31

MOYERS LAW P.C.
490 N. 31st St., Suite 101
Billings, Montana 59101
406-655-4900
406-655-4905 fax

23

CLERK OF THE
DISTRICT COURT
KRISTIE LEE BOELTER

2013 APR 2 PM 4 54

FILED

BY

DEPUTY

**MONTANA THIRTEENTH JUDICIAL DISTRICT COURT**
**YELLOWSTONE COUNTY**

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF | ) Probate No. DP 12-0081 |
| | ) |
| RUSSELL JAMES MONACO, | ) |
| | ) **ORDER OF APPOINTMENT OF CO-** |
| | ) **PERSONAL REPRESENTATIVE** |
| | ) |
| Deceased. | ) |

Kathy Monaco, having petitioned this Court to be appointed as Co-Personal

Representative of the estate of the above-named decedent, pursuant to the statutory priority of

appointment as defined by MCA § 72-3-502, and the Co-Personal Representative, Robert

Monaco having consented to said appointment

NOW, THEREFORE IT IS ORDERED that:

1.      The application is hereby granted, and Kathy Monaco is appointed Co-Personal

Representative of the estate of the above-named decedent without bond.

2.      Letters shall be issued to Co-Personal Representatives Robert Monaco and

Kathy Monaco based upon their qualifications and acceptance.

Dated this 2nd day of April, 2013.

                                        Audrey L. Degele
                              By:_____
                              Deputy    CLERK OF COURT

Page 3

**PLAINTIFF'S**
**EXHIBIT**
**A**

MOYERS LAW P.C.
550 N. 31ˢᵗ St., Suite 250
Billings, Montana 59101
406-655-4900
406-655-4905 fax

CLERK OF THE
DISTRICT COURT
CAROL MUESSIG

2012 APR 4 PM 3 07

FILED

BY _____
DEPUTY

1
2
3
4
5
6
7
8   MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY

9                                        INGRID GUSTAFSON
IN THE MATTER OF THE ESTATE OF      )
10                                   )   Probate No. DP 12 - 0 0 8 1
RUSSELL JAMES MONACO,               )
11                                   )   ORDER OF INFORMAL PROBATE
        Deceased.                    )
12 _____ )

13          The application of ROBERT MONACO for the informal Probate of the above-

14   named Decedent's estate and the appointment as Personal Representative, and it appearing that the

15   application is complete and contains the applicant's oath or affirmation that the statements

16   contained therein are true to the best of his knowledge and belief, the Clerk makes the following

17   findings based upon said application:

18          1. Russell James Monaco died on December 2, 2011, and at least 120 hours have

19   elapsed since Decedent's death.

20          2. The applicant is an interested person as defined by MCA § 72-1-103(25).

21          3. The application is complete and properly verified as required by law.

22          4. Venue is proper for the reason stated in the application.

23          5. From the statements in the application, the applicant has priority entitling him

24   to be appointed as personal representative of the estate of the Decedent in intestacy.

25          6. According to the application, no other personal representative has been

26   appointed in Montana or in any other state.

27

28   ORDER OF INFORMAL PROBATE                                                            1

1       7. Any notice required by MCA § 72-3-106 has been given.

2       8. No Will of the decedent has been offered for probate in this state or elsewhere,

3    and the applicant is not aware of any Will of the decedent;

4       9. Applicant is entitled to be appointed Personal Representative of the estate and

5    he is otherwise qualified.

6       10. The time limit for original probate has not expired.

7       NOW THEREFORE, IT IS ORDERED as follows:

8       1. The application is hereby granted and ROBERT MONACO is informally

9    appointed Personal Representative in intestacy of the above-named Decedent, to serve without the

10   necessity of bond.

11      2. No Will of the decedent has been offered for probate in this state or elsewhere,

12   and the applicant is not aware of any Will of the decedent;

13      3. Letters shall be issued to ROBERT MONACO upon qualification and

14

15   acceptance.

16      DATED this __4__ day of __April_____, 2012.

17

18                              Carol Musselg
                               CLERK OF DISTRICT COURT

19

20                              ROBYN SCHIERHOLT
                        By: _____
21                              Deputy Clerk

22

23

24

25

26

27

28   ORDER OF INFORMAL PROBATE                                          2

1   Jeremy Yellin
    419 4ᵗʰ Ave., Ste. A.
2   P.O. Box 564
    Havre, Montana 59501
3   Telephone: (406)265-3303
    Facsimile: (406)265-0600
4
    Attorney for the Estate of Russell James Monaco
5

6

7

8

9       MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY

                                        D P   1 2 - 0 0 8 1
10  IN THE MATTER OF THE ESTATE OF   )   Probate No. _____
                                     )   INGRID GUSTAFSON
11  RUSSELL JAMES MONACO,            )   WAIVER AND NOMINATION
                                     )
12                                   )
                  Deceased.          )
13  _____)

14          I, KATHY MONACO, hereby waive and decline priority to serve as personal

15  representative in the above-entitled estate pursuant to MCA § 72-3-502, and nominate and

16  consent to ROBERT MONACO serving as personal representative of the Estate of Russell James

17  Monaco.

18          DATED this 12ᵗʰ day of March, 2012.

19

20                                  _Kathy Monaco_
                                    KATHY MONACO
21
            SUBSCRIBED AND SWORN to before me this 12ᵗʰ day of MARCH_____,
22  2012, by KATHY MONACO.

23

24          _____
            Notary Public for the State of Montana
25          Printed Name: _____
26          Residing at: _____
            My Commission _____
27

28  WAIVER AND NOMINATION                                                      1

**BEFORE THE MEDICAL REVIEW PANEL**
**OF THE STATE OF WYOMING**

| | |
|---|---|
| IN THE MATTER OF THE CLAIM OF  ) | |
| THE ESTATE OF RUSSELL MONACO,) | |
| ) | |
| v.                                                              ) | **MRP 12-36** |
| ) | |
| **JOHN SCHNEIDER, M.D.;**                 ) | |
| **HARLEY MORRELL, P.A.-C.; and**       ) | |
| **WEST PARK HOSPITAL.**                     ) | |

## ORDER OF DISMISSAL

This matter comes before the Medical Review Panel pursuant to the Wyoming Medical Review Panel Act of 2005, W. S. § 9-2-1513 et. seq. and the Medical Review Panel Rules, adopted November 21, 2005.

This case was filed on October 1, 2013. On April 29, 2013, Harley Morrell, P.A.-C., by and through his attorney, Angela Ekker, and the Claimant filed, "Stipulated Agreement and Waiver of Medical Review Panel Hearing for Harley Morrell." On June 4, 2013, West Park Hospital, by and through its attorneys Ericka Smith and Corrinne Rutledge, and Claimant filed, "Stipulated Agreement and Waiver of Medical Review Panel Hearing for West Park Hospital District, West Park Hospital."

Pursuant to an Order Setting Medical Review Panel Hearing, Requiring Submission of Disclosure Statement, and Scheduling Pre-Hearing Conference, this matter was set for hearing on June 25, 2013. Disclosure Statements were required to be filed on June 5, 2013. Claimant and Respondent Schneider timely filed Disclosures. From the Disclosures it appears that the witnesses expected to be called for the hearing were Dr. Schneider, Kathy Monaco and a discharge nurse.

On June 5, 2013 the Director was informed that Dr. Schneider was unavailable for the hearing scheduled for June 25, 2013, due to a medical procedure for a relative in upstate New York. Attached was a travel itinerary showing travel from California to New York on June 21, 2013 and return on June 29, 2013. Dr. Schneider requested a continuance and resetting of the matter in August, 2013.

After reviewing the request for a continuance, and recognizing that the delay caused by a continuance causes prejudice to the Claimant, the Director finds that the request for continuance should be denied, and as the presence of the Respondent is vital to the hearing and he is not available, that this hearing should be dismissed, and that the

PLAINTIFF'S
EXHIBIT
tabbie's
**6**

Claimant has met the requirement of the Medical Review Panel Act, and should be authorized to proceed with this matter to a court of competent jurisdiction.

NOW, THERERFORE, based on the unavailability of the Respondent at the scheduled Medical Review Panel hearing, pursuant to W.S. § 9-2-1521, this matter be and hereby is dismissed.

IT IS FURTHER ORDERED, that the Claimant has complied with the requirements of the Wyoming Medical Review Panel Act, W.S. § 9-2- 1513 et. seq.; that no further action or proceeding shall take place with this claim, and that the Claimant is authorized to immediately pursue the claim against John Schneider, M.D., Harley Morrell, P.A.-C., and West Park Hospital, in a court of competent jurisdiction. Pursuant to W.S. § 9-2-1518(a), this dismissal constitutes the final decision of the Medical Review Panel, and the tolling of the applicable limitation period shall begin to run again thirty (30) days after the filing of this decision.

Dated this 7th day of June, 2013

Eric A. Easton #5-2176
Director, Medical Review Panel

## CERTIFICATE OF SERVICE

I, Eric A. Easton, do hereby certify that a true and correct copy of the foregoing ORDER
OF DISMISSAL was served upon the parties by depositing a true and correct copy in the
U.S. mail, postage prepaid this 7th day of June, 2013, to the following:

> Jon Moyers
> Moyers Law, P.C.
> 490 North 31st Street, Ste. 101
> Billings, MT 59101
>
> Fred Paoli, Jr.
> Paoli & Brown, P.C.
> 116 West Callender St.
> Livingston, MT 59047
>
> Corinne Rutledge *– representing West Park Hospital*
> Ericka Smith
> Lathrop & Rutledge, P.C.
> P.O. Box 4068
> Cheyenne, WY 82003
>
> Angela Ekker *– representing Harley Morrell, PA-C*
> Lathrop and Gage
> 950 Seventeenth Street, Ste. 2400
> Denver, CO 80202
>
> Steve Emery *– representing Dr. Schneider*
> Williams, Porter, Day & Neville
> P.O. Box 10700
> Casper, WY 82602
>
> Office of Administrative Hearings
> 2020 Carey Avenue, 5th Floor
> Cheyenne, WY 82002

Eric A. Easton, Director #5-2176
Medical Review Panel

**SUPPLEMENTAL NOTICE OF CLAIM OF KATHY MONACO, INDIVIDUALLY, AND AS PERSONAL REPRESENTAIVE OF THE ESTATE OF RUSSELL MONACO, FOR AND ON BEHALF OF ALL PERSONS WHO COULD SUE FOR THE DEATH OF RUSSELL MONACO, PURSUANT TO THE WYOMING GOVERNMENTAL CLAIMS ACT (W.S. § 1-39-101, et seq. LEXIS 2009) AND ARTICLE 16, SEC. 7 OF THE CONSTITUTION OF THE STATE OF WYOMING**

TO:    West Park Hospital District
West Park Hospital
Business Office
707 Sheridan Ave
Cody, WY 82414

Wyoming Insurance Department
106 East 6th Avenue
Cheyenne, WY 82202

Wyoming Board of Medicine
130 Hobbs Ave., Suite A
Cheyenne, WY 82002

General Services Division
Department of Administration and Information
Woodson Building
801 West 20th Street
Cheyenne, WY 82002

Pursuant to Wyo. Stat. Ann. 1-39-113, and Article 16, Section 7, of the Wyoming Constitution, Claimant Kathy Monaco, individually, and as Personal Representative of the Estate of Russell Monaco, for and on behalf of all persons who could sue for the death of Russell Monaco ("Claimants"), submit this Supplemental Notice of Claim to the General Services Division, Department of Administration and Information, and West Park Hospital District, West Park Hospital, Wyoming Insurance Department, and Wyoming Board of Medicine.

The Hospital District is a Wyoming Governmental Entity, organized pursuant to Wyo. Stat. Ann. 35-2-401 et seq. (LEXIS 2009); the Hospital District is an agency as defined by Wyo. Stat. Ann. 16-3-101 (b)(i) (LEXIS 2009). The Wyoming Insurance Department is responsible for approving liability insurance and insurers in the state. The Wyoming Board of Medicine is responsible for investigating the conduct of physicians and restricting the practices of unsafe or incompetent physicians.

This supplemental notice relates to a claim made within two years of the alleged acts, errors, and omissions of West Park Hospital District, West Park Hospital, Wyoming Insurance Department, and Wyoming Board of Medicine, as permitted by Wyoming law. West Park

Page 1



PLAINTIFF'S
EXHIBIT
C

Hospital District, West Park Hospital, and the Wyoming Board of Medicine, and its counsel have notice of this claim.

This claim also is being asserted against John Schneider, M.D., his Physician's Assistant, Harley Morrell, and Northern Rockies Neuro-Spine, LLC, to the extent that they are employees and medical staff of West Park Hospital, the extent to which West Park Hospital is vicariously liable for their negligence, and/or the extent to which Dr. Schneider had apparent authority or ostensible agency for West Park Hospital, and/or to the extent to which they were part of a joint venture or enterprise. Dr. Schneider and Mr. Morrell have notice of this claim.

    1.    Claimants:

Kathy Monaco, individually, and as Personal Representative of the Estate of Russell Monaco, for and on behalf of persons who could sue for the death of Russell Monaco.

Claimants' Counsel:

Jon M. Moyers
Moyers Law P.C.
550 North 31st Street, Suite 250
Billings, MT 59101
(406) 655-4900
(406) 655-4905 Fax
jon@jmoyerslaw.com
Wyoming Bar No. 6-3661

Fred Paoli, Jr.
Paoli & Brown, PC
116 West Callender St.
Livingston, MT 59047
406-222-4420
406-222-1032 (fax)
fpaoli@bridgeband.com

    2.    Health Care Providers and State Agencies Against Whom Claim is Filed:

West Park Hospital
707 Sheridan Ave
Cody, WY 82414

John H. Schneider, M.D.
John H. Schneider d/b/a Northern Rockies Neuro-Spine, LLC
2877 Overland Avenue, Suite C
Billings, MT 59102
(307) 587-0777
(406) 651-8196 Fax

Harley G. Morrell, PA-C
29 Iron Creek Drive
Cody, WY 82414

Wyoming Insurance Department
106 East 6th Avenue
Cheyenne, WY 82202

Wyoming Board of Medicine

　　　3.　　Time, place and circumstances of the losses, including the name of the public employees involved to the extent presently known are that Mr. Russell Monaco was treated at West Park Hospital, beginning on or about November 28, 2011, and then discharged on December 1, 2011, whereupon he died on or about December 2, 2011. The death was known to employees of West Park, including CEO Doug McMillan, the risk managers, nursing staff, Dr. Schneider, and Mr. Monaco.

　　　4.　　Description of Injury and Death of Mr. Monaco:

On November 20, 2011, Russell Monaco presented to the Billings Clinic Emergency Department in Billing, Montana with complaints of serious back pain. An MRI was ordered, and Mr. Monaco was prescribed pain medication and told to follow up with his primary care physician two days later to review the results of the MRI and make a plan for treatment.

Mr. Monaco presented to his primary care physician, on November 22, 2011. The physician recommended a neurosurgical consultation to determine the source of Mr. Monaco's pain and to make a treatment plan. No consultation occurred at Billings Clinic.

Mr. Monaco then presented to neurosurgeon Dr. John H. Schneider on November 28, 2011 at West Park Hospital in Cody, Wyoming. He was admitted for care at West Park Hospital. At the hospital, Dr. Schneider, with assistance from West Park Hospital employees, performed decompressive lumbar laminectomy at L2-3, L3-4, and L4-5, bilateral partial facetectomy and foraminotomy for bilateral nerve decompression and exploration of discogenic deterioration at L2-3, L3-4, and L4-5.

Mr. Monaco remained at West Park Hospital following the November 28, 2011 surgery, until December 1, 2011. Mr. Monaco experienced moderate pain on November 29 and 30 which was controlled by various medications. On November 30, 2011, Dr. Schneider and Mr. Morrell ordered a Fentanyl transdermal patch for Mr. Monaco for pain control; the prescription was filled by West Park Hospital. Thereafter, it was noted by West Park Hospital employees that Mr. Monaco had oxygen saturation on room air at below normal and unsafe levels. On the date of discharge, Mr. Monaco's oxygen saturation problems persisted; his oxygen saturation was noted by West Park at 75%, an unsafe level. West Park Hospital, Dr. Schneider and/or Mr. Morrell nevertheless discharged Mr. Monaco from the hospital, in violation of standard protocol and contrary to the standard of care.

Page 3

Further, Mr. Monaco was discharged with specific orders to use the following prescription medications:

Fentanyl patches (Duragesic) 50 mcg/hr patches x 5patches
Dilaudid (Hydromorphone Hydrochloride) 4 mg x 90 pills
Oxycodone/Acetaminophen 7.5-325 pills x 120 pills
Valium (diazepam) 5 mg x 90 pills

Each of these medications was known to West Park Hospital to be a powerful respiratory depressant when used by itself or in combination with other respiratory depressants. Use of these drugs in an uncontrolled environment without proper appropriate medical surveillance places patients at substantial risk of death or serious injury. West Park Hospital knew or should have known that according to the U. S. Food and Drug Administration each drug had a "black box" warning regarding the dangerous respiratory depressant effect of the drug. This warning is the sternest warning for any drug that is permitted to be on the market due to the known substantial risk of death or serious injury. Further, Fentanyl and Dilaudid are contraindicated for the control of post-operative pain.

In addition to the prescriptions, at West Park Hospital, Mr. Monaco was given a 50 mg injection of the pain medication Meperidine (Demerol), and a 25 mg injection of anti-nausea medication Promethazine (Phenergan), which has depressive effects. Specific discharge instructions that denied Mr. Monaco home oxygen or oxygen monitoring equipment, in spite of his low oxygen saturation while on room air on the day of discharge. Indisputably, Mr. Monaco should not have been discharged from the hospital in his condition on these medications without supervision and monitoring.

Upon discharge from West Park Hospital, Mr. Monaco and his wife returned to their home in Montana. As directed, Ms. Monaco filled the prescriptions; Mr. Monaco took the medications as prescribed; and he died thereafter. At approximately 6:00 am on December 2, 2011, Mrs. Monaco found her husband unresponsive in the position that she had left him the night before. He was blue and lifeless. She called emergency medical services; resuscitative efforts were not attempted. Mr. Monaco was declared dead at the scene.

Mr. Monaco died as a result of being discharged in his condition and from the medicine prescribed to him. Forensic testing of Mr. Monaco's urine and blood was performed by the State of Montana, Department of Justice, Forensic Science Division. This revealed the quantitated amounts of the prescribed drugs: Oxycodone 0.21 MG/L; Meperidine 0.17 MG/L; Diazepam 0.12 MG/L; Fentanyl 1.2 ng/mL; Norfentanyl 0.20 ng/mL. On the basis of this analysis and his December 2, 2011 autopsy, Dr. Bennett, a Board Certified Forensic Pathologist, concluded:

Toxicology studies through the Montana Forensics Laboratory found significant levels of Oxycodone, Fentanyl, Meperidine and Diazepam, all of which have respiratory depressant effects, the combination sufficient to explain this man's death. In my opinion, this man died as a result of this mixed drug use.

No other fatal medical problem was identified on autopsy. All four of the medications were prescribed with the knowledge of West Park Hospital, Dr. Schneider and his physician's assistant, Mr. Morrell, and administered to Mr. Monaco consistent with the prescribed dosage.

     5.      Elements of Claim Against West Park Hospital District and West Park Hospital:

West Park Hospital's conduct, by and through its agents, medical staff, employees and assigns, including Dr. Schneider and Northern Rockies Neuro-Spine, LLC, was negligent and violated the applicable standard of care in the following ways, resulting in injury and death to Mr. Monaco:

     (a)     Failed to follow the standard of care when it filled the prescription for Fentanyl and other medications for use by Mr. Monaco, a post-operative patient, in contravention of the prescription drug warnings and federal guidelines;

     (b)     Failed to provide supplemental oxygen to Mr. Monaco after its staff were informed of his unsafe and abnormal oxygen saturation;

     (c)     Failed to protect Mr. Monaco by not using the chain of command when its staff were instructed to discharge Mr. Monaco on respiratory depressants, without home oxygen or medical monitoring, when his reported oxygen saturations were below a safe level;

     (d)     Failed to ensure that Mr. Monaco was discharged consistent with appropriate standing orders without respiratory compromise or risk of respiratory depression from prescribed medication;

     (e)     Discharged Mr. Monaco in spite of his low oxygen saturation state;

     (f)     Discharged Mr. Monaco in contravention of the standing orders for the safe discharge of a patient;

     (g)     Failed to warn Mr. and Mrs. Monaco of the risk of substantial injury and death from the use of these medications given his low oxygen saturation state;

     (h)     Improperly held out Dr. Schneider as a competent physician when it knew or should have known that patients would trust and rely upon West Park Hospital in evaluating Dr. Schneider's credentials, training, experience, poor character, and abilities;

     (i)     Misled patients, including Mr. Monaco, into believing that Dr. Schneider was a capable physician to treat his medical condition;

     (j)     Breached it duty to protect patients, including Mr. Monaco, from obtaining care from Dr. Schneider, based upon information known to it about the credentials, training, experience, poor character, and abilities of Dr. Schneider; and

(k)     Failed to supervise the conduct of its agent or employee Dr. Schneider when it knew or should have known of his prior claims history, rate of surgical complications, prescription of medications in contravention of known risks and warnings, prior patients complaints, intra-hospital professional review of his medical practices, and failure to conform to applicable standards of care in surgery, patient care, diagnostic interpretation, and post-operative discharge of patients from the hospital;

(l)     Failed to require, verify, determine, or substantiate that Dr. Schneider and/or Mr. Morrell had liability insurance sufficient to compensate patients injured by their conduct and malpractice;

(m)    Failed to require, verify, determine, or substantiate that the captive insurance company created by Dr. Schneider was proper and legal to insure the medical practice of Dr. Schneider and Mr. Morrell, and sufficient to compensate patients in Wyoming injured by their conduct and malpractice;

(n)     Failed to require, verify, determine, or substantiate that Dr. Schneider and/or Mr. Morrell had other funds, sureties, bonds, assets, or guarantees sufficient to compensate patients injured by their conduct and malpractice;

(o)     Acted with willful, intentional, wanton, and reckless disregard for the safety of others.

6.     Elements of Claim Against Wyoming Insurance Department:

Wyoming Insurance Department conduct, by and through its agents, employees and assigns, negligently failed to require, verify, determine or substantiate that Dr. Schneider and/or Mr. Morrell had liability insurance sufficient to compensate patients injured by their conduct and malpractice.

7.     Elements of Claims Against Wyoming Board of Medicine:

Wyoming Board of Medicine, by and through its agents, employees and assigns, negligently failed to revoke, suspend, restrict, or limit Dr. Schneider and/or Mr. Morrell rights, privileges, and license to practice medicine in the State of Wyoming, including the prescription of medication and discharge of patients, after it knew or should have known from prior claims, complaints, warnings, lawsuits, applications, and other sources of information that he/they were unsafe and incompetent and that his/their patients were at substantial risk of injury.

8.     Witnesses:

Witnesses are Kathy Monaco, Russell Monaco's widow, Judy Monaco, Russell's mother, and Robert Monaco, the personal representative of the estate and brother of Russell Monaco,

along with Dr. John Schneider and his PA, Harley Morrell, as well as West Park Hospital's risk manager, Chief Financial Officer, Chief Executive Office, intra-hospital committees, and other former and current West Park Hospital Employees.  Claimant has identified other expert witnesses.

    9.    Amount of Compensation or other Relief Demanded:

| | |
|---|---|
| Medical Expenses: | $ 25,354.30 |
| Funeral Expenses: | $ 6,160.00 |
| Lost Wages and Other Benefits: | $ 890,879.00 |
| Other Damages: | $ 5,910.00 |
| Emotional and Mental Damages: | $3,000,000.00 |
| Pain and Suffering: | $2,500,000.00 |
| Loss of enjoyment of life: | $1,000,000.00 |
| Loss of Consortium: | $2,000,000.00 |
| Punitive Damages: | $5,000,000.00 |

This claim is hereby made for all damages authorized under the law of the state of Wyoming, including but not necessarily limited to, the amounts set forth in Wyo. Stat. Ann. 1-39-118 (LEXIS 2009), and/or the liability insurance coverage available to the governmental entity and/or its employees, whichever amounts are greater.

Supplemental notice of this Claim is given this 6th day of March 2013.

Attorneys for Claimant

Jon M. Moyers
MOYERS LAW P.C.
550 North 31st Street, Suite 250
Billings, MT   59101
(406) 655-4900
(406) 655-4905 Fax
jon@jmoyerslaw.com
Wyoming Bar No. 6-3661

Fred Paoli, Jr.
Paoli & Brown, PC
116 West Callender St.
Livingston, MT   59047
406-222-4420
406-222-1032 (fax)
fpaoli@bridgeband.com

## SIGNATURE AND CERTIFICATION

I, Kathy Monaco, individually, and as Personal Representative of the Estate of Russell Monaco, for and on behalf of all persons who could sue for the death of Russell Monaco, have read and understand the provisions of the false swearing statute.  I hereby certify under penalty of false swearing that the foregoing claim, including all of its attachments, if any, is true and accurate.  This supplemental claim is in compliance with the signature and certification requirements of Article 16, Section 7, of the Wyoming Constitution.

Kathy Monaco
March 6, 2013

STATE OF MONTANA )
) ss.
County of Yellowstone )

Subscribed and sworn to before me, a Notarial Officer, this March 6, 2013.

SHERRI PAYNE
NOTARY PUBLIC for the
State of Montana
Residing at Billings, Montana
My Commission Expires
January 10, 2014

SEAL

Sherri Payne
Notary Public for the State of Montana

| STATE OF | COUNTY OF |
|---|---|

IN THE

**Kathy Monaco individually and as Personal Representative of the Estate of Russell Monaco for and on the behalf of all persons who could sue for the death of Russell Monaco**
*Plaintiff,*
-vs-

*Defendant.*

Civil Action No:

### SERVICE RETURN FOR GENERAL SERVICES DIVISION DEPARTMENT OF ADMINISTRATION AND

I, <u>Danielle Broderick</u>, being first duly sworn upon my oath does hereby depose and say that I am a person above the age of majority and I am not a party to the foregoing action or have an interest therein.

1. [►] I made service of said *Notice of Claim. Supplemental Notice Of Claim Of Kathy Monaco, Individually, And As Personal Representaive Of The Estate Of Russell Monaco For And On Behalf Of All Persons Who Could Sue For The Death Of Russell Monaco, Pursuant To The Wyoming Governmental* in the county aforesaid on the **24th** day of **May, 2013**, at **1:55 PM** by delivering a copy of the same, to **General Services Division Department of Administration and Information** to wit:

   a. [  ] Personally and in person at:
        [  ] Home
        [  ] Work:
        [  ] Bank:
        [►] Other: **General Services Division**

   b. [►] By leaving copies with **Hibbs Casey (Administrator)**, a person over the age of 14 years old: **General Services Division Department of Administration and Information, Woodson Building801 West 20th Street Cheyenne, WY.**

2. [  ] I WAS UNABLE TO SERVE FOR THE FOLLOWING REASON:

_____

Danielle Broderick

Subscribed and sworn to before me by Danielle Broderick this __2__ day of __June__, 2013.

KAYLA MARROQUIN - NOTARY PUBLIC
County of Albany    State of Wyoming
My Commission Expires February 3, 2014

Notary Public / Clerk



**PLAINTIFF'S EXHIBIT**
**D**

| STATE OF | COUNTY OF |
| --- | --- |

IN THE

**Kathy Monaco individually and as Personal Representative of the Estate of Russell Monaco for and on the behalf of all persons who could sue for the death of Russell Monaco**

*Plaintiff,*

-vs-

*Defendant.*

Civil Action No:

## SERVICE RETURN FOR WEST PARK HOSPITAL DISTRICT/ WEST PARK HOSPITAL

I, **Kris Holliday**, being first duly sworn upon my oath does hereby depose and say that I am a person above the age of majority and I am not a party to the foregoing action or have an interest therein.

    1. [▶] I made service of said *Notice of Claim. Supplemental Notice Of Claim Of Kathy Monaco, Individually, And As Personal Representaive Of The Estate Of Russell Monaco For And On Behalf Of All Persons Who Could Sue For The Death Of Russell Monaco, Pursuant To The Wyoming Govermental* in the county aforesaid on the **24th** day of **May, 2013**, at **8:35 AM** by delivering a copy of the same, to **West Park Hospital District/ West Park Hospital** to wit:

        a. [ ] Personally and in person at:
            [ ] Home
            [ ] Work:
            [ ] Bank:
            [▶] Other: **West Park Hospital**

        b. [▶] By leaving copies with **McMIllan Doug (Administrator)**, a person over the age of 14 years old: **West Park Hospital District/ West Park Hospital, 707 Sheridan Ave Cody, WY.**

    2. [ ] I WAS UNABLE TO SERVE FOR THE FOLLOWING REASON:

 

Kris Holliday

Subscribed and sworn to before me by Kris Holliday this ___ day of ___ 2013.

Karen L. Davidsen
Notary Public / Clerk

KAREN L. DAVIDSON   NOTARY PUBLIC
COUNTY OF        STATE OF
PARK           WYOMING
MY COMMISSION EXPIRES AUGUST 19, 2015

Moyers Law P.C.

329020