Stephenson D. Emery, W.S.B. #5-2321
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
P.O. Box 10700
159 North Wolcott, Suite 400
Casper, Wyoming 82602
307-265-0700 (telephone)
307-266-2306 (telefax)
Attorneys for Claimant

## IN THE UNITED STATED DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| ESTATE OF RUSSELL MONACO, BY AND THROUGH KATHY MONACO, WRONGFUL DEATH REPRESENTATIVE AND PERSONAL REPRESENTATIVE, AND KATHY MONACO, INDIVIDUALLY AND ON BEHALF OF MINOR CHILDREN, <br><br>        Plaintiffs, <br><br> vs. <br><br> HARLEY G. MORRELL, PA-C, JOHN SCHNEIDER, JR., M.D., NORTHERN ROCKIES NEURO-SPINE, P.C., a Wyoming Corporation, WEST PARK HOSPITAL DISTRICT, WEST PARK HOSPITAL, QUORUM HEALTH RESOURCES, LLC, a Delaware Corporation, AND JOHN DOES 1 THROUGH 10 <br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Case No.: 13-CV-151S |

## DEFENDANTS JOHN H. SCHNEIDER, MD AND NORTHERN
## ROCKIES NEURO-SPINE, P.C.'S ANSWER TO FIRST AMENDED COMPLAINT

COME NOW Defendants, JOHN H. SCHNEIDER, MD (hereinafter "Schneider") and

NORTHERN ROCKIES NEURO-SPINE HEALTH CARE, (hereinafter "NRNS"), by and

through their undersigned attorney, Stephenson D. Emery of Williams, Porter, Day & Neville, P.C., and hereby submit their Answers and Affirmative Defenses to Plaintiff's Complaint and state as follows:

1.      At all relevant times hereto, Russell Monaco was a resident of Billings, Montana. He was survived by his wife, Kathy Monaco, their two minor daughters, and his brother, Rob Monaco.  By court appointment, Kathy Monaco and Rob Monaco are Personal Representatives of the Estate and legally authorized to bring this suit for and on behalf of all persons legally permitted to sue for damages.

**ANSWER:**

**Schneider and NRNS admit that Russell Monaco was a resident of Billings, Montana and that he was survived by his wife, Kathy Monaco, their two minor daughters, and his brother, Rob Monaco. Schneider and NRNS are without sufficient information to admit or deny whether, "[b]y court appointment, Kathy Monaco and  Rob Monaco are Personal Representatives of the Estate and legally authorized to bring this suit for and on behalf of all persons legally permitted to sue for damages[,]"  and therefore deny the same.**

2.      Plaintiff Kathy Monaco and her two minor children are residents of Billings, Montana.

**ANSWER:**

**Admitted.**

3.      Defendant Harley Morrell was a licensed Physician's Assistant in the State of Wyoming, and employed by Defendants Schneider, Jr., and Northern Rockies Neuro-Spine P.C.,

in Park County, Wyoming, from May 2006 to January 2012.

**ANSWER:**

**Admitted.**

4.      Upon information and belief, Defendant Morrell is a resident of Georgia.

**ANSWER:**

**Defendants are without sufficient information to admit or deny the allegations of this paragraph and therefore deny the same.**

5.      Defendant John Schneider, Jr., M.D., was a licensed physician in the State of Wyoming, with a surgical practice in Park County, Wyoming.

**ANSWER:**

**Admitted.**

6.      Upon information and belief, Defendant Schneider lives in Wyoming or California.

**ANSWER:**

**Denied.**

7.      Defendant Northern Rockies Neuro-Spine, P.C., was a Wyoming corporation created, incorporated, managed, and controlled by Defendant Schneider related to his medical services provided to patients, including Russell Monaco.

**ANSWER:**

**Admitted.**

8.      Defendant West Park Hospital District claims to be a Wyoming Governmental

Entity, organized pursuant to Wyo. Stat. Ann. 35-2-401 et seq. (LEXIS 2009); the Hospital

District claims to be an agency as defined by Wyo. Stat. Ann. 16-3-101 (b)(i) (LEXIS 2009).

Defendant West Park District created, operates, funds, supervises, directs, and manages West

Park Hospital, and represents to the public that the hospital is a full service health facility with

experienced and skilled employees and/or agents.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering**

**Defendants Schneider and NRNS, and therefore no response is required; in the event that**

**it is possible to construe any allegation or statement in this Paragraph to be directed to**

**these answering defendants, the same is denied.**

9.      Defendant West Park Hospital is a Wyoming facility licensed to operate as a

medical facility in Cody, Wyoming.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than these**

**answering Defendants, and therefore no response is required; in the event that it is possible**

**to construe any allegation or statement in this Paragraph to be directed at these**

**Defendants, the same is denied.**

10.      Defendant Quorum Health Resources, LLC is a Delaware corporation doing

business in the state of Tennessee, that owns, operates, supervises, manages, and advises West

Park Hospital District and West Park Hospital.  Upon information and belief, Defendant Health

Resources, LLC employs management at the hospital.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS, and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

11.     Defendants John Does 1 through 10 are other persons who may be liable to Plaintiffs for the injuries suffered by Russell Monaco, and who may have been involved in fraudulently transferring assets of Defendant Schneider, whose identities currently are not known.

**ANSWER:**

**Denied.**

12.     Pursuant to 28 USC § 1332(c), jurisdiction is proper based upon the diversity of citizenship of the parties and that the amount in controversy in this action exceeds the sum or value of $75,000.

**ANSWER:**

**This paragraph states a legal conclusion to which no answer is required by Defendants Schneider and NRNS. In the event an answer is required, these Defendants deny the same.**

13.     Pursuant to 28 USC § 1391(b), venue is proper because a substantial part of tortious events or omissions giving rise to this claim occurred in Wyoming, and Defendants Morrell, Schneider, Northern Rockies Neuro-Spine, West Park Hospital District, and West Park

Hospital conducted business and reside there.

**ANSWER:**

**Defendants deny that any tortious events or omissions took place that involve them. Schneider admits that NRNS is a Wyoming corporation. Schneider admits that he was a Wyoming resident at the time of the incident at issue herein, but denies that he is currently a resident of Wyoming. Defendants admit that Harley Morrell was a Wyoming resident at the time of the incident at issue herein, but are without sufficient information to admit or deny whether Harley Morrell is currently a resident of Wyoming, and therefore deny the same. These Defendants admit that pursuant to 28 USC § 1391(b), venue is proper because a substantial part of the events alleged by plaintiffs occurred in Wyoming and that Defendants Morrell, Schneider, NRNS, West Park Hospital District, and West Park Hospital conducted business and resided therein at the time of the incident at issue.**

14.     Prior to the commencement of this action, Plaintiffs filed a timely claim with the Wyoming Medical Review Panel, W.S. §§ 9-2-1513 et seq.  By waiver of Defendants Morrell and West Park Hospital, and the determination that Plaintiffs had satisfied all statutory requirements regarding all other Defendants, the proceeding was dismissed.

**ANSWER:**

**Admitted.**

15.     Prior to the commencement of this action, Plaintiffs gave timely notice by personal service of the claim to the State of Wyoming and Defendants West Park Hospital District and West Park Hospital, pursuant to the Wyoming Governmental Claims Act, W.S. §§ 1-

39-101, *et seq*., and Article 16, Sec. 7, of the Constitution of the State of Wyoming.  A copy of

the Supplemental Notice of Claim and the service are expressly incorporated in this Complaint,

and are attached hereto as Exhibits C and D, respectively.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering**

**Defendants Schneider and NRNS, and therefore no response is required; in the event that**

**it is possible to construe any allegation or statement in this Paragraph to be directed to**

**these answering defendants, the same is denied.**

16.    Prior to filing of this action, Plaintiffs have consulted with duly qualified experts

in support of the allegations set forth herein.

**ANSWER:**

**Defendants are without sufficient information to admit or deny the allegations of**

**this Paragraph and therefore deny the same.**

### FACTS COMMON TO ALL CAUSES OF ACTION

17.    On or about November 28, 2011, Russell Monaco was accepted as a patient by

Defendants Morrell, Schneider, Northern Rockies Neuro-Spine P.C., West Park Hospital

District, and West Park Hospital.

**ANSWER:**

**Admitted.**

18.    On November 28, 2011, after 2:00 p.m., Defendant Morrell assisted his

supervising physician, Defendant Schneider, in performing spinal surgery on Russell Monaco at

Defendant West Park Hospital to address an asserted "neurosurgical emergency."

**ANSWER:**

**Admitted.**

19.     The surgery at Defendant West Park Hospital consisted of a junction decompressive lumbar laminectomy at levels L2-3, L3-4, and L4-5, bilateral partial facetectomy and foraminotomy for bilateral nerve decompression, and exploration of discogenic deterioration at L2-3, L3-4, and L4-5.

**ANSWER:**

**Admitted.**

20.     At approximately 8:12 a.m., on Wednesday, November 30, 2011, pursuant to orders written by Defendants Schneider, Morrell and West Park Hospital medical staff, a Duragesic Fentanyl transdermal patch (50 MCG/HR) was administered to Russell Monaco for pain control.

**ANSWER:**

**Defendants admit that Russell Monaco received a Duragesic fentanyl transdermal patch (50 MCG/HR) at approximately 8:12 a.m., on Wednesday, November 30, 2011; they deny the remaining allegations of this Paragraph.**

21.     Based upon the Food & Drug Administration ("FDA"), the federal regulatory agency responsible for the administration of medications, this prescription of Duragesic Fentanyl transdermal patch to Russell Monaco was in contravention of the FDA's most stern warning, referred to as a "black box" warning, by which the manufacturer acknowledges that the drug

carries a substantial risk of serious or life threatening adverse effects.

**ANSWER:**

**Denied.**

22.     Based upon information from the FDA and others, Defendants knew that the drug "has the highest potential of abuse and associated risk of fatal overdoses due to respiratory depression."  Also, Defendants knew that the drug should "ONLY be used in patients who are already receiving opioid therapy, who have demonstrated opioid tolerance, and who required a total daily dose at least equivalent to Duragesic 25 mcgt/h."

**ANSWER:**

**The document speaks for itself. Defendants admit that all narcotic medications have the highest potential of abuse and admit that when patients and their family members in control of their medication refuse to follow recommendations and instructions for medication use, then any and all medications that suppress respiratory drive can cause respiratory suppression. Defendants admit that Duragesic patches are utilized in patient's refractory to other narcotics in controlling their symptoms of pain that require continuous pain management.**

23.     In addition, Defendants knew that the FDA had warned:

Because serious or life-threatening hypoventilation could occur, DURAGESIC (Fentanyl Transdermal system) is contraindicated:

- In patients who are not opioid tolerant
- In the management of acute pain or in patients who require opioid analgesia for a short period of time
- In the management of post-operative pain, including use after out-patient  or day

surgeries (e.g. tonsillectomies)
- In the management of mild pain
- In the management of intermittent pain (e.g., use on an as needed basis [prn])

**ANSWER:**

**The document speaks for itself. Defendants admit that Duragesic manufacturers include the above list in their guidelines and recommendations for application and use of Duragesic patches without defining the standard of care for the application of this medication. Defendants specifically deny that this list applied to Russell Monaco.**

24.     The medication had been prescribed to multiple other post-operative patients under the direction, review, verification, acknowledgement, approval, consent and signature of Defendants Morrell, Schneider, West Park Hospital District and West Park Hospital, in contravention of the "black box" warning for prescribing that medication for that purpose.

**ANSWER:**

**Defendants admit that the medication had been prescribed to other post-operative patients under the direction, review, verification, acknowledgement, approval, consent and signature of Defendants Morrell and Schneider; Defendants deny the remaining allegations of this paragraph.**

25.     Defendants knew that the Full Prescribing Information for Duragesic Fentanyl transdermal patch system states, "Since the peak Fentanyl concentrations generally occur between 20 and 72 hours of treatment, prescribers should be aware that serious or life threatening hypoventilation may occur, even in opioid tolerant patents, during the initial application period." And, Defendants knew that "Duragesic [is] ONLY for use in patients who are already tolerant to

opioid therapy of comparable potency.   Use in non-opioid tolerant patients may lead to fatal respiratory depression.   Overestimating the Duragesic dose when converting patients from another opioid medication can result in fatal overdose with the first dose." And, Defendants knew that "Patients who are considered opioid tolerant are those who have been taking, for a week or longer, at least 60 mg of morphine daily, or at least 30 mg of oral Oxycodone daily, or at least 8 mg of oral hydromorphone daily or an equianalgesic dose of another opioid."

**ANSWER:**

**Defendants admit that Duragesic manufacturers include guidelines and recommendations for application and use of Duragesic patches without defining the standard of care for the application of this medication. Defendants admit that all narcotic medication can cause respiratory suppression when patients and their family members in control of their medication refuse to follow recommendations and instructions of medication use. Defendants admit that Duragesic patches are utilized in patients refractory to other narcotics in controlling their symptoms of pain who require continuous pain management. Defendants deny that the definition of opioid tolerance is limited to the example defined in this complaint. Defendants deny that Russell Monaco did not meet the criteria for use of a Duragesic patch while an inpatient at West Park Hospital.**

26.     Defendants knew that Russell Monaco was not opioid tolerant when the Fentanyl transdermal system patch was prescribed by Defendants Morrell, Schneider, and West Park Hospital, and the prescription was filled and applied to Russell Monaco by the hospital staff. Instead, Defendants knew or should have known that Russell Monaco was at substantial risk of

life threatening hypoventilation from the drug.

**ANSWER:**

**Denied.**

27.     Subsequent to the application of the Fentanyl patch, Russell Monaco experienced documented low oxygen saturation events. On December 1, at 8:26 a.m., during a "room air challenge," Russell Monaco's oxygen saturation fell to 75%. Defendant West Park Hospital staff reported to Defendants Morrell and Schneider that Russell Monaco's oxygen saturation had fallen, but the precise percentage was not reported by Defendant West Park Hospital staff or requested by Defendants Morrell or Schneider.

**ANSWER:**

**Denied. Defendants admit that Russell Monaco experienced one event of low oxygen saturation at approximately 1:08 pm on November 30, 2011 and that Defendant Schneider lectured Russell and Kathy Monaco at length at approximately 3:00 pm on November 30, 2011 about Russell Monaco's high tolerance to multiple narcotic medications as well as his severe nausea preventing conversion to oral medications for pain management and identifying the Duragesic patch that was the sole medication beginning to control his pain due to his high dose narcotic tolerance and resistance toward all other narcotics utilized to control pain.**

28.   Defendants Morrell and Schneider decided to discharge Russell Monaco that same day as scheduled, which order was conveyed to Defendant West Park Hospital staff. Defendant West Park Hospital consented and agreed to the discharge.

**ANSWER:**

**Denied. Defendant Schneider admits to writing discharge orders for Russell Monaco at 7:30 a.m. on December 1, 2011 when Russell Monaco was medically stable off supplemental oxygen, in excellent pain control using only the durgesic patch. Defendants deny authorizing the discharge of Russell Monaco in a medically unstable condition.**

29.     Defendant West Park Hospital staff did not report the 75% oxygen saturation level to any supervisor at the hospital, and no such communication was documented in the hospital's records.

**ANSWER:**

**Defendants are without information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore deny the same.**

30.     At 10:00 a.m., December 1, 2011, Defendant West Park Hospital discharged Russell Monaco pursuant to order. The discharge was at the direction and with the knowledge, consent, approval, verification, and signature of Defendants Morrell, Schneider, West Park Hospital District and West Park Hospital. In addition to his (1) Fentanyl transdermal patches (Russell Monaco had one in place and was given a prescription for five replacement patches), Russell Monaco was prescribed (2) hydromorphone (Dilaudid), 4 mg, (3) Oxycodone, 8-5 325 mg; (4) diazepam (Valium), 5 mg. Additionally, at the time of discharge, Defendants Morrell and Schneider ordered an intramuscular injection consisting of Meperidine (Demerol), a pain medication, and promethazine (Phenergan), an anti-nausea medication with depressive effects. All of these controlled substances, individually and/or collectively, have identified respiratory

side-effects.

**ANSWER:**

**Denied. Defendant Schneider was not aware of Russell Monaco's alteration in mental status or medical instability and therefore did not direct his discharge. Standing orders written by Defendant Schneider provide clinical parameters for discharge which Russell Monaco did not meet. Defendants deny the authorization of Demerol and Phenergan at the time of hospital discharge when Russell Monaco demonstrated medical instability and oxygen desaturation.   Defendants admit that PAC Morrell prescribed fentanyl, dilaudid, oxycodone and valium with prior instructions to Kathy and Russell Monaco on November 30th at 3 pm to consume each of these medications as prescribed in series and independent of each other medication.   Defendant PAC Morrell reported reiterating Defendant Schneider's instructions to only use the fentanyl patch for pain management at discharge and only when fentanyl patch was no longer required for pain control, transition to dilaudid and then Oxycodone and valium once the dilaudid was not longer needed for pain control.**

31.    The improper administration of these controlled substances for post-operative patients at Defendant West Park Hospital had been the practice of Defendants Morrell, Schneider, Northern Rockies Neuro-Spine, West Park Hospital District, and West Park Hospital.  Each order related to these other patients were known, directed, reviewed, verified, acknowledged, approved, consented and/or signed by Defendants Morrell, Schneider, Northern Rockies Neuro-Spine, and West Park Hospital.

Defendants John H. Schneider, MD and
Northern Rockies Neuro-Spine,
P.C.'s Answer to Complaint

**ANSWER:**

**Denied.**

32.     Russell Monaco was discharged without any oxygen monitoring or supplemental oxygen, notwithstanding his recent and known hypoxic events during his hospital stay and these prescribed medications.

**ANSWER:**

**Defendants admit that Russell Monaco was discharged without any oxygen monitoring or supplemental oxygen; Defendants deny the remaining allegations of this Paragraph.**

33.     Russell Monaco was discharged without any provision for skilled medical care to monitor and supplement his oxygen.

**ANSWER:**

**Denied. Defendants affirmatively state and allege that Russell Monaco was instructed to follow up with his primary care provider and to use his incentive spirometer. Defendants further state and allege that Russell Monaco refused oxygen supplementation during his hospitalization and prior to his discharge on November 30, 2011.**

34.     The discharge from the hospital violated the standing orders for the discharge of patients that were to be followed by Defendants Morrell, Schneider, West Park Hospital District and West Park Hospital.

**ANSWER:**

**Admitted. Russell Monaco was discharged by nursing personnel at 10:00 a.m. on**

**December 1, 2011 in a clinical condition that violated standing orders for Defendant Schneider's patients.  Defendants are without sufficient information to admit or deny the allegations of this paragraph as they apply to defendant West Park Hospital District and West Park Hospital.**

35.     The discharge of Russell Monaco in his medical condition on these medications without any oxygen monitoring or supplemental oxygen placed Russell Monaco at high risk of respiratory event, which event in fact caused his premature death.

**ANSWER:**

**Denied.**

36.     Thereafter, following his discharge from Defendant West Park Hospital on December 1, 2011, Russell Monaco returned to his residence in Billings, Montana, where he took the medication as prescribed and retired to sleep.  At 6:00 a.m., on December 2, 2011, Russell Monaco's family found him unresponsive. Emergency medical services personnel were unable to detect any life, efforts to revive him were called off, and he was declared dead at the scene.

**ANSWER:**

**Defendants admit that following his discharge from Defendant West Park Hospital on December 1, 2011, Russell Monaco returned to his residence in Billings, Montana. These Defendants also admit that at 6:00 a.m., on December 2, 2011, Russell Monaco's family found him unresponsive, and that emergency medical services personnel were unable to detect any life, efforts to revive him where called off, and he was declared dead at the scene.**

**Schneider and NRNS deny that Russell Monaco took medication as prescribed and retired to sleep.**

37.     The Yellowstone County, Montana, Coroner's Office, and Dr. Thomas Bennett, a board certified forensic pathologist, based upon autopsy and testing of Russell Monaco's blood by the State of Montana, determined that Russell Monaco died from "mixed drug overdose (including Oxycodone, Fentanyl, Meperidine, and Diazepam)." Further, "Toxicology studies through the Montana Forensics Laboratory found significant levels of Oxycodone, Fentanyl, Meperidine and Diazepam, all of which have respiratory depressant effects, the combination sufficient to explain this man's death. In my opinion, this man died as a result of this mixed drug overdose." All four of these medications were prescribed and/or administered to Russell Monaco per orders from Defendants Morrell and Dr. Schneider, with the knowing approval of Defendant West Park Hospital and were the cause of Russell Monaco's death. No other fatal cause was found independent of the prescribed medication.

ANSWER:

**The document speaks for itself. Defendants admit that the allegations paraphrase the coroner's report. Defendants deny that Russell Monaco took the medications as prescribed.**

38.     Russell Monaco was not negligent in any way related to his care, treatment or death.

ANSWER:

**Denied.**

39.     By virtue of his death, Russell Monaco and his family have lost his future wages and fringe benefits, household services, and consortium, and Russell Monaco suffered conscious pain and suffering as he died.

**ANSWER:**

**Defendants are without sufficient information to admit or deny the allegations of this paragraph and therefore deny the same.**

### ALLEGATIONS OF PROFESSIONAL NEGLIGENCE
### COUNT I - Defendant Morrell

40.     Plaintiffs incorporate by reference the preceding allegations as if set forth herein.

**ANSWER:**

**Defendants incorporate herein by reference their responses to the allegations of Plaintiffs' amended Complaint as set forth in Paragraphs 1 through 39 above as if fully set forth herein.**

41.     At all times relevant, Defendant Morrell held himself out as a Physician's Assistant with a specialty in neurosurgery.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

42.     At all times relevant hereto, Defendant Morrell had a physician-patient

relationship with Russell Monaco.

ANSWER:

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

43.     At all times relevant, Russell Monaco trusted Defendant Morrell as a Physician's Assistant with specialty training in the field of neurosurgery to comply with his duty to provide him with the degree of care expected of specialists in that field, with his learning, skill and specialty training.

ANSWER:

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

44.     Defendant Morrell owed Russell Monaco the duty to use the care and skill ordinarily used by reputable specialists practicing in the same field and under similar circumstances, and to apply means and methods which would reasonably be exercised and applied under similar circumstances by such specialists.

ANSWER:

**This allegation is directed to defendants, parties, or actors other than answering**

**Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

45.     In the prescription of dangerous narcotics, Defendant Morrell owed Russell Monaco the highest standard of care, knowing the risk of seriously bodily injury and death from the use of those drugs by a naïve user.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

46.     In providing care and surgical services to Russell Monaco, Defendant Morrell was negligent and provided services below the accepted and prudent standards of medical care, including without limitation, the following:

a.     Prescribed medication contrary to established warnings and protocol; and/or,

b.     Failed to monitor, assess, treat, remedy and supervise treatment of Russell Monaco's respiratory depression caused by the prescribed medication and/or surgery; and/or,

c.     Discharged Russell Monaco in violation of standing orders for respiratory compromised patients; and/or,

d.     Discharged Russell Monaco on medication with known risks of respiratory depression; and/or,

e.     Discharged Russell Monaco when he knew or should have known that other patients had died from prescription induced respiratory depression; and/or,

f.     Discharged Russell Monaco without monitoring equipment, skilled care, supplemental oxygen, and warnings of the signs and symptoms of respiratory depression; and/or,

g.     Failed to supervise the discharge of Russell Monaco to ensure proper respiration, monitoring, and oxygen supply; and/or,

h.     Failed to obtain informed consent from Russell Monaco for the prescription of medication that would be used contrary to established warnings and protocol; and/or,

i.     Failed to warn patients, hospital personnel, and/or government personnel of the practice of Defendant Schneider to prescribe medication post-operatively that placed discharged patients at risk of respiratory depression, injury and death; and/or,

j.     Failed to obtain sufficient liability insurance to cover injuries caused by the negligence of Defendants.

**ANSWER:**

**This allegation, and each of its subparts, is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement, or any subpart of this Paragraph to be directed to these answering defendants, the same, and any subpart, is denied.**

47.     Further, by the doctrine of respondeat superior and agency, Defendants Schneider and Northern Rockies Neuro-Spine P.C. are vicariously liable for these negligent acts and

omissions of their employee and agent, Defendant Morrell.

**ANSWER:**

**Denied.**

48.     Following the death of Russell Monaco, Defendant Morrell left his employment with Defendants Schneider and Northern Rockies Neuro-Spine.   On April 12, 2012, the Wyoming Board of Medicine suspended his Wyoming Physician Assistant License (no. 298), based upon his voluntary consent decree.   Since that time he has not practiced as a Physician's Assistant.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

**COUNT II - Defendant Schneider**

49.     Plaintiffs incorporate by reference the preceding allegations as if set forth herein.

**ANSWER:**

**Defendants incorporate herein by reference their responses to the allegations of Plaintiffs' amended Complaint as set forth in Paragraphs 1 through 48 above as if fully set forth herein.**

50.     At all times relevant, Defendant Schneider held himself out as a specialist in neurosurgery, board certified as a neurosurgeon, licensed to practice medicine in Wyoming, and

owner of Northern Rockies Neuro-Spine, P.C.

**ANSWER:**

**Admitted.**

51.     Upon information and belief, prior to Defendant Schneider's appointment to the medical staff at Defendant West Park Hospital, he had resigned his staff privileges or had his staff privileges restricted or terminated at St. Vincent's Hospital and/or (Deaconess) Billings Clinic in Billings, Montana.

**ANSWER:**

**Denied. Defendant Schneider was credentialed at West Park Hospital in 1998 and maintained his credentials at West Park Hospital, Saint Vincent Hospital and Deaconess Hospital during the same period. Defendant Schneider denies ever having his credentials as a neurological surgeon performing all surgical procedures accepted as standard for a board certified neurosurgeon at Montana hospital facilities limited, altered, restricted or revoked. Defendant Schneider denies restriction or termination of his Montana staff privileges at any time during requested periods of credentialing by the defendant. Defendant Schneider electively chose to not reapply for credentials at Saint Vincent Healthcare and Deaconess Hospital in Billings Montana based solely upon defendant Schneider's surgical practice location distant from Billings Montana.**

52.     Upon information and belief, Defendant Schneider has been the subject of numerous lawsuits and disciplinary proceedings.

**ANSWER:**

**Defendants object and move to strike the allegations in this paragraph. The allegations are designed to harass, embarrass, and annoy. Without waiving this objection, Defendant Schneider has been the subject of lawsuits and a disciplinary proceeding; Defendants deny the remaining allegations of this Paragraph.**

53.    At all times relevant, Russell Monaco trusted Defendant Schneider as a specialist in neurosurgery fully competent to provide the diagnosis and treatment required of such a specialist, necessary for the health and well being of Russell Monaco.

ANSWER:

**Defendants admit that, at all times relevant, Defendant Schneider was a specialist in neurosurgery fully competent to provide the diagnosis and treatment required of such a specialist, necessary for the health and well being of Russell Monaco; Defendants are without knowledge sufficient to form a belief as to the remaining allegations of this Paragraph, and therefore, deny the same.**

54.    Defendant Schneider, as an appointed member of the West Park Hospital Medical Staff with "Clinical Privileges," routinely performed surgery at West Park Hospital, admitted and discharged patients, ordered prescription medications, and accessed hospital equipment, facilities and personnel, which were necessary to effectively exercise such privileges.

ANSWER:

**Defendant Schneider admits that he had clinical privileges at West Park Hospital credentialed as a neurological surgeon.**

55.    Defendant Schneider owed Russell Monaco the duty to use the care and skill

ordinarily used by reputable specialists practicing in the same field and under similar circumstances, and to apply means and methods which would reasonably be exercised and applied under similar circumstances by such specialists.

**ANSWER:**

**Admitted.**

56.     In the prescription of dangerous narcotics, Defendant Schneider owed Russell Monaco the highest standard of care, knowing the risk of serious bodily injury and death from the use of those drugs by a naïve user.

**ANSWER:**

**Defendants deny the characterization of Russell Monaco as a naïve user of narcotics. Defendants admit that all narcotic medications have the highest potential of abuse and admit that when patients and their family members in control of their medication refuse to follow recommendations and instructions of medication use, then any and all narcotic medications that suppress respiratory drive can cause respiratory suppression.**

57.     In providing care and surgical services to Russell Monaco, Defendant Schneider was negligent and provided services below safe the accepted and prudent standards of medical care, including without limitation, the following:

a.     Prescribed medication contrary to established warnings and protocol; and/or,

b.     Failed to monitor, assess, treat, remedy and supervise treatment of Russell Monaco's respiratory depression caused by the prescribed medication and/or surgery; and/or,

c.     Discharged Russell Monaco in violation of standing orders for respiratory compromised patients; and/or,

d.     Discharged Russell Monaco on medication with known risks of respiratory depression; and/or,

e.     Discharged Russell Monaco when he knew or should have known that other patients had died from prescription induced respiratory depression; and/or,

f.     Discharged Russell Monaco without monitoring equipment, skilled care, supplemental oxygen, and warnings of the signs and symptoms of respiratory depression; and/or,

g.     Failed to supervise the discharge of Russell Monaco to ensure proper respiration, monitoring, and oxygen supply; and/or,

h.     Failed to obtain informed consent from Russell Monaco for the prescription of medication that would be used contrary to established warnings and protocol; and/or,

i.     Failed to warn patients, hospital personnel, and/or government personnel of the practice of Defendant Schneider to prescribe medication post-operatively that placed discharged patients at risk of respiratory depression, injury and death; and/or,

j.     Failed to obtain sufficient liability insurance to cover injuries caused by the negligence of Defendants.

**ANSWER:**

**Defendants deny each and every allegation in this paragraph.**

58.     By the doctrine of respondeat superior and agency, Defendant Schneider is

vicariously liable for these negligent acts and omissions of his employee and agent, Defendant Morrell.

**ANSWER:**

**This paragraph states a legal conclusion to which no answer is required by Defendants Schneider and NRNS. In the event an answer is required, these Defendants deny the same.**

59.     Upon information and belief, following the death of Russell Monaco, the State of Wyoming suspended Defendant Schneider's medical license.

**ANSWER:**

**Admitted.**

60.     Further, upon information and belief, Defendant Schneider, the Schneider Family Limited Partnership (an alter ego of Defendant Schneider), and Northern Rockies Insurance Company, LLC (a captive insurance company created by Defendant Schneider) engaged in a series of fraudulent acts in furtherance of a fraudulent scheme to transfer his assets out of the reach of injured parties, including Russell Monaco and his family.

**ANSWER:**

**Denied.**

61.     Upon information and belief, following the death of Russell Monaco, Defendant Schneider borrowed $3,000,000 from the Schneider Family Limited Partnership and then submitted a claim for indemnification to his captive insurance company, Northern Rockies Insurance Co., owned, operated, and managed by Defendant Schneider and his sister, Kathleen

Burrows.

     **ANSWER:**

     **Denied.**

     62.    Northern Rockies Insurance Co. paid the claim, with the sole purpose and intent of leaving the insurance company insolvent.

     **ANSWER:**

     **Denied. Defendants affirmatively allege that Northern Rockies Insurance Company identified real and potential claims, analyzed liability exposure based upon policies issued by same company for defendant and accepted for defense each and every claim that was/ is appropriate based upon policies issued.**

     63.    Upon payment of the claim, Dr. Schneider then returned the funds to the Schneider Family Limited Partnership.

     **ANSWER:**

     **Denied.**

     64.    In this and other ways, Defendant Schneider has attempted to hide, transfer, dissipate assets owed to creditors and injured patients like Plaintiffs, by transferring assets, property or obligations to insiders, including his family, trusts, and business entities.

     **ANSWER:**

     **Denied.**

     65.    Transfer of assets to insiders were made with actual intent to hinder, delay or defraud creditors and thus constitutes fraudulent transfers, under the Uniform Fraudulent

Transfer Act, W.S. §§ 34-14-201, et seq.

**ANSWER:**

**This paragraph states a legal conclusion to which no answer is required by Defendants Schneider and NRNS. In the event an answer is required, these Defendants deny the same.**

66.    Defendant Schneider knew of the claim by Plaintiffs, and other injured patients, at the time of the fraudulent transfers.

**ANSWER:**

**Denied.**

67.    In addition, upon information and belief, Defendant Schneider failed to properly capitalize, license, and register Northern Rockies Insurance Co., with the specific intent of hindering, delaying and defrauding payment to creditors and injured patients like Plaintiffs.

**ANSWER:**

**Denied. Northern Rockies Insurance Company identified real and potential claims, analyzed liability exposure based upon policies issued by same company for defendant and accepted for defense each and every claim that was/is appropriate based upon policies issued. Northern Rockies Insurance Company exists as a business entity in the state of Montana.**

68.    Plaintiffs lack an adequate remedy at law because, unless relief sought in this Court is granted, Defendant Schneider will have succeeded in fraudulently transferring his assets to the substantial detriment of Plaintiffs.

**ANSWER:**

**Denied.**

69.     All fraudulent and illegal transfers must be voided and all assets must be accounted for and secured by this Court for the protection of Plaintiffs.

**ANSWER:**

**Denied.**

### COUNT III - Defendant Northern Rockies Neuro-Spine, P.C.

70.     Plaintiffs incorporate by reference the preceding allegations as if set forth herein.

**ANSWER:**

**Defendants incorporate herein by reference their responses to the allegations of Plaintiffs' amended Complaint as set forth in Paragraphs 1 through 69 above as if fully set forth herein.**

71.     Defendant Northern Rockies Neuro-Spine P.C., by and through its employees and agents, including Defendants Morrell and Schneider, owed Russell Monaco the duty to use the care and skill ordinarily used by reputable specialists practicing in the same field and under similar circumstances, and to apply means and methods which would reasonably be exercised and applied under similar circumstances by such specialists.

**ANSWER:**

**Admitted.**

72.     In providing care and surgical services to Russell Monaco, Defendant Northern Rockies Neuro-Spine P.C. was negligent and provided services below the accepted and prudent

standards of medical care, including without limitation, the following by its employees and agents, including Defendants Morrell and Schneider:

a.     Prescribed medication contrary to established warnings and protocol; and/or,

b.     Failed to monitor, assess, treat, remedy and supervise treatment of Russell Monaco's respiratory depression caused by the prescribed medication and/or surgery; and/or,

c.     Discharged Russell Monaco in violation of standing orders for respiratory compromised patients; and/or,

d.     Discharged Russell Monaco on medication with known risks of respiratory depression; and/or,

e.     Discharged Russell Monaco when he knew or should have known that other patients had died from prescription induced respiratory depression; and/or,

f.     Discharged Russell Monaco without monitoring equipment, skilled care, supplemental oxygen, and warnings of the signs and symptoms of respiratory depression; and/or,

g.     Failed to supervise the discharge of Russell Monaco to ensure proper respiration, monitoring, and oxygen supply; and/or,

h.     Failed to obtain informed consent from Russell Monaco for the prescription of medication that would be used contrary to established warnings and protocol; and/or,

i.     Failed to obtain sufficient liability insurance to cover injuries caused by the negligence of Defendants.

**ANSWER:**

**Denied, including each and every sub-part of this Paragraph.**

73.     Further, by the doctrine of respondeat superior and agency, Defendant Northern

Rockies Neuro-Spine P.C. is vicariously liable for negligent acts and omissions of its employees

and agents, including Defendants Morrell and Schneider.

**ANSWER:**

**This Paragraph states a legal conclusion to which no answer is required by**

**Schneider and NRNS; in the event an answer is required, however, these Defendants deny**

**the same.**

### COUNT IV - Defendant West Park Hospital District

74.     Plaintiffs incorporate by reference the preceding allegations as if set forth herein.

**ANSWER:**

**Defendants incorporate herein by reference their responses to the allegations of**

**Plaintiffs' amended Complaint as set forth in Paragraphs 1 through 73 above as if fully set**

**forth herein.**

75.     At all times relevant, Defendant West Park Hospital District recognized its

responsibility for the "overall quality of clinical services provided by its members" and therefore

established bylaws and other hospital polices so that it "can fulfill its responsibility for quality of

care" to patients.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering**

**Defendants Schneider and NRNS and therefore no response is required; in the event that**

**it is possible to construe any allegation or statement in this Paragraph to be directed to**

these answering defendants, the same is denied.

76.    At all times relevant, Defendant West Park Hospital District granted clinical privileges to Defendants Schneider and Morrell to perform surgery at the facility, approved credentialing for Defendants Schneider and Morrell, and established bylaws for its medical staff to thereby meet "all relevant standards and to improve the quality of care delivered in this institution." These bylaws included the requirement that Defendants Schneider and Morrell "possess current, valid professional liability insurance coverage in such form and in amounts satisfactory to the Hospital."

ANSWER:

This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.

77.    Defendant West Park Hospital District thus owed Russell Monaco the duty for the appointed members of its medical staff to use the care and skill ordinarily used in the same field and under similar circumstances, and to apply means and methods which would reasonably be exercised and applied under similar circumstances by such specialists.

ANSWER:

This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to

these answering defendants, the same is denied.

78.    Defendant West Park Hospital District thus owed Russell Monaco the duty to ensure that the hospital bylaws were complied with, that the medical staff possessed sufficient medical skill to practice medicine at the facility, and that the medical staff possessed sufficient professional liability insurance.

ANSWER:

This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.

79.    Defendant West Park Hospital District knew or should have known about Defendant's Schneider's numerous medical malpractice lawsuit, multiple claims history, departure from the Billings medical facilities, issues related to his character, post-operative complications, and other matters prior to appointing him to its medical staff.  By making such appointments and allowing him unrestricted access to patients, Defendant placed such patients at substantial risk of harm.

ANSWER:

This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.

Defendants John H. Schneider, MD and
Northern Rockies Neuro-Spine,
P.C.'s Answer to Complaint

80.    Defendant West Park Hospital District knew or should have known that Defendants Schneider and Morrell did not have sufficient or legal professional liability insurance and thereby placed patients at jeopardy for being unable to be compensated for negligence by these Defendants.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

81.    Defendant West Park Hospital District knew or should have known that Defendant Schneider acted in violation of the hospital bylaws related to liability insurance, and thereby authorized his surgical practice knowing that he had failed to comply with the bylaws, to the substantial detriment of patients like Russell Monaco.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

82.    Defendant West Park Hospital District was negligent and provided services below the accepted and prudent standards of medical care, including without limitation, the following by its employees, agents and medical staff, including Defendants Morrell, Schneider and West

Park Hospital:

      a.      Prescribed medication contrary to established warnings and protocol; and/or,

      b.      Failed to monitor, assess, treat, remedy and supervise the treatment of Russell Monaco's respiratory depression caused by the prescribed medication and/or surgery; and/or,

      c.      Failed to act upon information related to the desaturation of Russell Monaco in a way most protective of his health; and/or

      d.      Discharged Russell Monaco in violation of standing orders for respiratory compromised patients; and/or,

      e.      Discharged Russell Monaco on medication with known risks of respiratory depression; and/or,

      f.      Discharged Russell Monaco when it knew or reasonably should have known that other patients had died from prescription induced respiratory depression; and/or,

      g.      Discharged Russell Monaco without monitoring equipment, skilled care, supplemental oxygen, and warnings of the signs and symptoms of respiratory depression; and/or,

      h.      Failed to supervise the discharge of Russell Monaco to ensure proper respiration, monitoring, and oxygen supply; and/or,

      i.      Failed to obtain informed consent from Russell Monaco for the prescription of medication that would be used contrary to established warnings and protocol; and/or,

      j.      Failed to ensure that Defendants Morrell, Schneider, and Northern Rockies Neuro-Spine had obtained sufficient liability insurance to cover injuries caused by the negligence of Defendants; and/or,

k.      Failed to utilize the chain of command to prevent the unsafe discharge of Russell Monaco given his low oxygen saturation on the day of discharge.

**ANSWER:**

**This allegation and each of its sub-parts is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement, or any of the sub-parts of this Paragraph to be directed to these answering defendants, the same is denied.**

83.     Further, by the doctrine of respondeat superior and agency, Defendant West Park Hospital District is vicariously liable for negligent acts and omissions of its employees, medical staff and agents, Defendants Morrell, Schneider, and West Park Hospital.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

84.     Further alleging, Defendant West Park Hospital District was negligent and provided services below safe the accepted and prudent standards of medical care, including without limitation:

a.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known that he failed to provide

appropriate quality of patient care;

b.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider when it knew or should have known that he did not possess current, valid professional liability insurance coverage in such form and the amounts satisfactory to compensate victims of his malpractice;

c.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known that he routinely discharged patients on prescription medication that placed the patient at risk of respiratory depression, bodily injury and/or death;

d.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known that he routinely discharged patients at risk of respiratory depressions, bodily injury and/or death;

e.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known that he was not of "good reputation and character";

f.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known that he had unreasonably high post-surgical complications, infections and revisions;

g.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known of the numerous patient complaints filed with the Wyoming Medical Review Panel and/or medical staff;

h.      Failed to investigate his surgical, prescription, and discharge practices, knowing of other patient complaints and complications;

i.      Failed to adopt and enforce bylaws, policies, and procedures sufficient for quality and safety health care to patients like Russell Monaco;

j.      Failed to modify or terminate the clinical privileges, rights and credentialing granted to Defendant Schneider, when it knew or should have known that he had failed to obtain liability insurance in an amount adequate to cover the injuries suffered by patients.

**ANSWER:**

**This allegation and each of its sub-parts is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement, or any of the sub-parts of this Paragraph to be directed to these answering defendants, the same is denied.**

**COUNT V - Defendant West Park Hospital**

85.     Plaintiffs incorporate by reference the preceding allegations as if set forth herein.

**ANSWER:**

**Defendants incorporate herein by reference their responses to the allegations of Plaintiffs' amended Complaint as set forth in Paragraphs 1 through 84 above as if fully set forth herein.**

86.     At all times relevant, Defendant West Park Hospital recognized its responsibility for the "overall quality of clinical services provided by its members" and therefore established

bylaws and other hospital polices so that it "can fulfill its responsibility for quality of care" to patients.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

87.    At all times relevant, Defendant West Park Hospital granted clinical privileges to Defendants Schneider and Morrell to perform surgery at the facility, approved credentialing for Defendants Schneider and Morrell, and established bylaws for its medical staff to thereby meet "all relevant standards and to improve the quality of care delivered in this institution." These bylaws included the requirement that Defendants Schneider and Morrell "possess current, valid professional liability insurance coverage in such form and in amounts satisfactory to the Hospital."

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

88.    Defendant West Park Hospital thus owed Russell Monaco the duty for the appointed members of its medical staff to use the care and skill ordinarily used in the same field

and under similar circumstances, and to apply means and methods which would reasonably be exercised and applied under similar circumstances by such specialists.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

89.     Defendant West Park Hospital thus owed Russell Monaco the duty to ensure that the hospital bylaws were complied with, that the medical staff possessed sufficient medical skill to practice medicine at the facility, and that the medical staff possessed sufficient professional liability insurance.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

90.     Defendant West Park Hospital knew or should have known about Defendant's Schneider's numerous medical malpractice lawsuits, multiple claims history, departure from the Billings medical facilities, issues related to his character, post-operative complications, and other matters prior to and after appointing him to its medical staff.  By making such appointments and allowing him unrestricted access to patients, Defendant placed such patients at substantial risk of

harm.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

91.     Defendant West Park Hospital knew or should have known that Defendants Schneider and Morrell did not have sufficient or legal professional liability insurance and thereby placed patients at jeopardy for being unable to be compensated for negligence by these Defendants.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

92.     Defendant West Park Hospital knew or should have known that Defendant Schneider acted in violation of the hospital bylaws related to liability insurance, and thereby authorized his surgical practice knowing that he had failed to comply with the bylaws, to the substantial detriment of patients like Russell Monaco.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering**

**Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

93.    Defendant West Park Hospital was negligent and provided services below the accepted and prudent standards of medical care, including without limitation, the following by its employees, agents and medical staff, including Defendants Morrell and Schneider:

a.    Prescribed medication contrary to established warnings and protocol; and/or,

b.    Failed to monitor, assess, treat, remedy and supervise treatment of Russell Monaco's respiratory depression caused by the prescribed medication and/or surgery; and/or,

c.    Failed to act upon information related to the desaturation of Russell Monaco in a way most protective of his health; and/or

d.    Discharged Russell Monaco in violation of standing orders for respiratory compromised patients; and/or,

e.    Discharged Russell Monaco on medication with known risks of respiratory depression; and/or,

f.    Discharged Russell Monaco when it knew or should have known that other patients had died from prescription induced respiratory depression; and/or,

g.    Discharged Russell Monaco without monitoring equipment, skilled care, supplemental oxygen, and warnings of the signs and symptoms of respiratory depression; and/or,

h.    Failed to supervise the discharge of Russell Monaco to ensure proper respiration, monitoring, and oxygen supply; and/or,

i.     Failed to obtain informed consent from Russell Monaco for the prescription of medication that would be used contrary to established warnings and protocol; and/or,

j.     Failed to ensure that Defendants Morrell, Schneider, and Northern Rockies Neuro-Spine had obtained sufficient liability insurance to cover injuries caused by the negligence of Defendants and/or,

k.     Failed to utilize the chain of command to prevent the unsafe discharge of Russell Monaco given his low oxygen saturation on the day of discharge.

**ANSWER:**

**This allegation and each of its sub-parts is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement, or any of the sub-parts of this Paragraph to be directed to these answering defendants, the same is denied.**

94.     Further alleging, Defendant West Park Hospital District was negligent and provided services below the accepted and prudent standards of medical care, including without limitation:

a.     Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known that he failed to provide appropriate quality of patient care;

b.     Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider when it knew or should have known that he did not possess

current, valid professional liability insurance coverage in such form and the amounts satisfactory to compensate victims of his malpractice;

c.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known that he routinely discharged patients on prescription medication that placed the patient at risk of respiratory depression, bodily injury and/or death;

d.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known that he failed to conduct himself "in the highest ethical tradition," to remain competent in his field, and "worthy in good character and professional ethics and conduct";

e.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known that he had unreasonably high post-surgical complications, infections and revisions;

f.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known of the numerous patient complaints filed with the Wyoming Medical Review Panel and/or medical staff;

g.      Failed to investigate his surgical, prescription, and discharge practices, knowing of other patient complaints and complications;

h.      Failed to modify or terminate the clinical privileges, rights and credentialing granted to Defendant Schneider, when it knew or should have known that he had failed to obtain liability insurance in an amount adequate to cover the injuries suffered by patients.

**ANSWER:**

This allegation and each of its sub-parts is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement, or any of the sub-parts of this Paragraph to be directed to these answering defendants, the same is denied.

95.      Further, by the doctrine of respondeat superior and agency, Defendant West Park Hospital is vicariously liable for negligent acts and omissions of its employees, medical staff and agents, including Defendants Morrell and Schneider.

**ANSWER:**

This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.

**COUNT VI – Defendant Quorum Health Resources, LLC**

96.      Plaintiffs incorporate by reference the preceding allegations as if set forth herein.

**ANSWER:**

Defendants incorporate herein by reference their responses to the allegations of Plaintiffs' amended Complaint as set forth in Paragraphs 1 through 95 above as if fully set forth herein.

97.      Defendant Quorum Health Resources, LLC owed Russell Monaco the duty to

operate, supervise, manage, and advise West Park Hospital District and West Park Hospital to ensure the quality of care necessary for his safety.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

98.     Defendant Quorum Health Resources, LLC owed Russell Monaco the duty to ensure that appropriate hospital bylaws were adopted and enforced to ensure that that the medical staff possessed sufficient medical skill to practice medicine at the facility, and that the medical staff possessed sufficient professional liability insurance.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

99.     Defendant Quorum Health Resources, LLC owed Russell Monaco the duty to ensure that the appointed members of its medical staff used the care and skill ordinarily used in the same field and under similar circumstances, and to apply means and methods which would reasonably be exercised and applied under similar circumstances by such specialists.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

100.    Defendant Quorum Health Resources, LLC owed Russell Monaco the duty to respond to patient complaints about Defendant Schneider; investigate claims and lawsuits against Defendant Schneider; supervise medical services provided by Defendant Schneider; investigate applications for clinical privileges and appointments made by Defendant Schneider; to ensure sufficient professional liability insurance was possessed by Defendant Schneider and Morrell; and enforce appropriate standing orders for the prescription of drugs and the discharge of patients from the hospital.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

101.    Defendant Quorum Health Resources, LLC was negligent and provided services below the accepted and prudent standards of medical care, including without limitation:

a.       Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known that he failed to provide appropriate quality of patient care;

b.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider when it knew or should have known that he did not possess current, valid professional liability insurance coverage in such form and the amounts satisfactory to compensate victims of his malpractice;

c.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known that he routinely discharged patients on prescription medication that placed the patient at risk of respiratory depression, bodily injury and/or death;

d.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known that he failed to conduct himself "in the highest ethical tradition," to remain competent in his field, and "worthy in good character and professional ethics and conduct";

e.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known that he had unreasonably high post-surgical complications, infections and revisions;

f.      Failed to modify and/or terminate the clinical privileges, rights, and credentialing granted to Defendant Schneider, when it knew or should have known of the numerous patient complaints filed with the Wyoming Medical Review Panel and/or medical staff;

g.      Failed to investigate his surgical, prescription, and discharge practices, knowing of other patient complaints and complications;

h.      Failed to modify or terminate the clinical privileges, rights and credentialing

granted to Defendant Schneider, when it knew or should have known that he had failed to obtain liability insurance in an amount adequate to cover the injuries suffered by patients.

**ANSWER:**

**This allegation and each of its sub-parts is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS, and therefore no response is required; in the event that it is possible to construe any allegation or statement or any of the sub-parts of this Paragraph to be directed to these answering defendants, the same is denied.**

102.   Further, by the doctrine of respondeat superior and agency, Defendant Quorum Health Resources, LLC is vicariously liable for negligent acts and omissions of its employees, medical staff and agents, including Defendants Morrell and Schneider.

**ANSWER:**

**This allegation is directed to defendants, parties, or actors other than answering Defendants Schneider and NRNS and therefore no response is required; in the event that it is possible to construe any allegation or statement in this Paragraph to be directed to these answering defendants, the same is denied.**

## DAMAGES AND JURY DEMAND

103.   The negligence of each Defendant, acting alone or in concert, as alleged above, in departure of the accepted standards of medical care, was a proximate and substantial contributing factor in bringing about the death of Russell Monaco and/or in causing:

a.   The conscious suffering and eventual death of Russell Monaco;

b.      The loss of opportunity and chance for a better result;

c.      The loss of income, consortium and normal marital relationship with Kathy Monaco;

d.      The loss of income, consortium and normal parental relationship with his two minor children.

**ANSWER:**

**Defendants Schneider and NRNS deny the allegations of this Paragraph, including each and every sub-part.**

104.    As a direct and proximate result of the negligence of each Defendant, as alleged above, Plaintiffs have suffered damages, including without limitation, the following:

a.      Past and future lost earnings of Russell Monaco;

b.      Past and future lost household services by Russell Monaco;

c.      Physical pain, suffering and emotional distress suffered by Russell Monaco;

d.      Physical pain, suffering and emotional distress suffered by Kathy Monaco and her surviving minor children

e.      Past and future lost enjoyment of life;

f.      Past and future lost established course of living; and,

g.      All damages recoverable by law.

**ANSWER:**

**Defendants Schneider and NRNS deny the allegations of this Paragraph including each and every sub-part.**

Defendants John H. Schneider, MD and
Northern Rockies Neuro-Spine,
P.C.'s Answer to Complaint

105.     Plaintiffs affirmatively allege that any statutory cap on their recovery of damages is violative of the Constitution of the State of Wyoming and thus unenforceable and invalid.  To the extent any cap may be applicable to his case, Plaintiffs seek declaratory relief.  Notice to the Wyoming Attorney General is given contemporaneously with the filing of this Complaint.

**ANSWER:**

**Denied.**

106.   **Defendants Schneider and NRNS deny each and every allegation not specifically admitted herein.**

### AFFIRMATIVE DEFENSES OF DEFENDANTS
### SCHNEIDER AND NRNS

**COME NOW,** Defendants Schneider and NRNS, through undersigned counsel and for their Affirmative Defenses state as follows:

1.     Plaintiffs' *First Amended Complaint* fails to state a claim upon which relief can be granted as to these answering Defendants.

2.     Plaintiffs have failed to mitigate their damages, if any there are, arising from this incident; and therefore, Plaintiffs are barred from recovery of any such damages.

3.     The damages claimed by Plaintiffs, if any there are, were caused by intervening and superseding acts, errors or omissions of actors other than these answering Defendants, for which these Defendants are not liable.

4.     The incident, injuries, and/or damages alleged to have been sustained by Plaintiffs

Defendants John H. Schneider, MD and
Northern Rockies Neuro-Spine,
P.C.'s Answer to Complaint

were not directly or proximately caused by these answering Defendants.

5.      These answering Defendants reserve the right to supplement their Affirmative Defenses as they become known during the course of discovery.

**WHEREFORE,** Defendants Schneider and NRNS, through undersigned counsel, pray that the *First Amended Complaint* against them be dismissed, that Plaintiffs take nothing by way of their *First Amended Complaint*, that these Defendants recover their costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

**DATED** this 9th day of January, 2014.

> John H. Schneider, MD and Northern Rockies Neuro-Spine, P.A., a Wyoming corporation, Defendants
>
>      /s/ STEPHENSON D. EMERY
> Stephenson D. Emery  W.S.B. #5-2321
> WILLIAMS, PORTER, DAY & NEVILLE, P.C.
> P. O. Box 10700
> 159 North Wolcott, Suite 400
> Casper, Wyoming  82602
> (307) 265-0700

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the *Defendants John H. Schneider and Northern Rockies Neuro-Spine, P.C.'s Answer to First Amended Complaint,* Case Number 13-CV-151S was served this 9th day of January, 2014, using the CM/ECF system and electronic notice as follows:

Jon M. Moyers
Moyers Law, PC
490 N. 31 Street, Suite 101
Billings, MT 59101

Angela L. Ekker
Lathrop & Gage
950 Seventeenth Street, Suite 2400
Denver, CO 90202

Fred Paoli, Jr.
Paoli & Brown, PC
116 West Callender Street
Livingston, MT 59047

J. Kent Rutledge
Corinne E. Rutledge
Ericka S. Smith
LATHROP & RUTLEDGE, P.C.
1920 Thomes Ave., Suite 500
P.O. Box 4068
Cheyenne, WY 82003-4068

/s/ STEPHENSON D. EMERY
Stephenson D. Emery

Defendants John H. Schneider, MD and
Northern Rockies Neuro-Spine,
P.C.'s Answer to Complaint